# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

ORIGINAL

FILED-USDC-NDTX-DA
'24 JUN 25 PM4:26

Sharlene Jackson
Plaintiff

v.

United States Postal Service
Defendant. additional defendant on
additional page

3-24CV1590-N

Civil Action No.

**COMPLAINT**

Disparate of treatment            Ref: Docket #'s 3:22-CV-D5180 RJB
Retaliation                             3:24-CV-0033OL-BT
Abuse of Power
Denial of promotion/Raise      Psychological distress
Hostile work environment
Intimidation
Exclusion
Wrongful termination (2012)
Decision on NRP class action
Repayment of garnishment
Breach of Contract
Violation of federal Statutes/Constitutional Rights
Emotional distress

\* Attach additional pages as needed.

| | |
|---|---|
| Date | 6·24·2024 |
| Signature | Sharlene Jackson |
| Print Name | SHARLENE JACKSON |
| Address | 221 Brownwood CT |
| City, State, Zip | Irving TX 75060 |
| Telephone | (678) 886-0810 |

# ADDITIONAL DEFENDANT'S

## Mgr. Maintenance (LEAD)
John C. Jobrey (Tour2), Individually and in his Official Capacity

## Maintenance Engineering Specialist
Cicil J. Cheeran (Tour2), Individually and in his Official Capacity

## Mgr. Maintenance Operations
Erick X. Williams (Tour2), Individually and in his official Capacity
Ricky W. Potts (Tour 3), Individually and in his Official Capacity
Raymund P. Tibayan (Tour1), Individually and in his Official Capacity

## Supervisors
Kim L. Gbade bo (Tour 1), Individually and in her Official Capacity
Jessica A. Potts (Tour 1), Individually and in her Official Capacity

## Union Stewart
Jimmy Williams (Tour1), Individually and in his Official Capacity

**American Postal Workers Union,** Individually and in their Official Capacity

# UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS

Jackson, Sharlene

V.

USPS

Complaint for Retaliation, Intimidation, Discrimination, Wrongful Termination, and Exclusion

Sharlene Jackson, by and through her undersigned counsel, hereby files this Complaint against Defendant, USPS Corporation, and alleges as follows:

Parties:

1.  Plaintiff, Sharlene Jackson, is an individual residing in the Northern District of Texas

2.  Defendant, USPS Corporation, is a corporation registered and doing business in the Northern District of Texas

## JURISDICTION AND VENUS

3.  This action arises under the laws of the United States, including but not limited to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et seq., and the Americans with Disabilities Act, 42 U.S.C. 12101 et seq.

4.  This Court has jurisdiction over this action pursuant to 28 U.S.C. 1331 and 28 U.S.C. 1343.

5.  Venue is proper in the Northern District of Texas pursuant to 28U.S.C. 1391(b) as the events giving rise to this action occurred within the District.

## FACTUAL ALLEGATIONS

6. Plaintiff, Sharlene Jackson, was employed by Defendant, USPS, from May 1998, until her termination on June 2012.
7. Throughout her employment, Plaintiff consistently received positive performance reviews and was never subject to any disciplinary action.
8. Plaintiff was subjected to retaliation, intimidation, and discrimination by Defendant after her raised concerns about workplace safety by another employee.
9. Defendant start the retaliation, intimidation, and discrimination 2001 (work place Sexual Harassment case in Ohio).
10. Plaintiff has been retaliated against at each USPS installation her has worked: Ohio, Georgia and now North Texas.
11. Plaintiff has been looked over for promotions and higher level pay were higher level is warranted.

## CLAIMS FOR RELIEF

### Count 1 – Retaliation

12. Plaintiff realleges and incorporates by reference each of the allegations set forth above.
13. Defendant retaliated against Plaintiff in violation of Title VII of the Civil Rights Act of 1964, as amended, by terminating her employment in retaliation for her EEO Complaints and grievance's activities.

### Count 2 – Discrimination

14. Plaintiff realleges and incorporates by reference each of the allegations set forth above.
15. Defendant discriminated against Plaintiff on basis of her protected activities in violation of Title VII of the Civil Rights of 1964, as amended.

4

### Count 3 - Wrongful Termination

16. Plaintiff realleges and incorporates by reference each of the allegations set forth above.

17. Defendant wrongfully terminated Plaintiff in violation of federal law and public policy.

### Count 4 – Intimidation

18. Plaintiff realleges and incorporates by reference each of the allegations set forth above.

19. Defendant intimidation against Plaintiff on basis of her civil rights in violation of Civil Rights Conspiracy 18 U.S.C. 241

### Prayer for Relief

Wherefore, Plaintiff respectfully requests that this Court enter judgment in this favor and against Defendant, USPS, on all counts of this Complaint, and grants the following relief:

1. Compensatory damages in an amount to be determined at trial;

2. Punitive damages in an amount to be determined at trail:

3. Attorney's fees and costs; and

4. Any further relief as this Court deems just and equitable.

### Jury Demand

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

Sharlene Jackson

I have been subjected to Retaliation, Discrimination, Intimidation and Unfair Work Conditions since I have been at North Texas P&DC:

## Retaliation

The adverse actions can include termination, demotion, reduction in pay, or other negative consequences, this adverse action was a direct result of my protected activity.

42 U.S. Code 3617

**PENAL CODE section 422.6, subdivision(a)**, makes it unlawful to, by force or threat of force oppress, injure, intimidate, or interfere with any other person.

## Discrimination

1. Unfair Treatment
2. Exclusion
3. Unequal Pay
4. Denied Opportunities
5. Change in job duties without justification
6. Favoritism

## Intimidation

The actions of Raymund Tiybana, Kim Gbadebo and Jessica Potts, actions or speech threatens or endangers the health, well-being, property, or safety of myself.

## Unfair work Conditions

Denied benefits or promotions to specific employees, discriminating against older workers, unequal pay, and many others.





- Current Status of the Case
- Videos To Help You Complete The Declaration Form
- Frequently Asked Questions

## Current Status of the Case

### December 11, 2023 – Status Update

The Administrative Judge held a video status conference with us on December 11, 2023. The Administrative Judge confirmed that the EEOC plans to begin designating certain Claimants for hearings on their relief claims in 2024. The Judge stated that the EEOC will give the parties 60-90 days advance notice before any hearings, so we should know much more about what to expect prior to the hearings taking place.

We will continue to provide updates on this website, including reports regarding the scheduling of hearings. Please continue to monitor this website for updates.

### October 16, 2023 – Status Update

The Administrative Judge held a video status conference with us on October 16, 2023. The Administrative Judge reported that the EEOC continues the process of preparing and reviewing files related to the claims. Much of the status conference was devoted to ensuring that the EEOC had a complete record of documents for the claims, and that the EEOC understood how the parties had organized and filed the case documents.

The Administrative Judge again reported that the EEOC plans to begin designating certain Claimants for hearings on their relief claims. The Judge plans to give the parties 60-90 days advance notice before any hearings, so we should know much more about what to expect prior to the hearings taking place.

We will continue to provide updates on this website, including reports regarding the scheduling of hearings.

### October 2, 2023 – Status Update

The Administrative Judge has scheduled a status conference for Monday, October 16, 2023 at 11 am. Consistent with prior status conferences, unfortunately, claimants are not permitted to join/attend the conference. Please check the website (nrpclassaction.com) for updates following the conference.

### August 17, 2023 – Status Update

On August 4, 2023, our offices submitted all relevant documentation on behalf of claimants with a claim number beginning with 200XXX (M-200XXX). The Administrative Judge has now granted a brief extension of time to submit any further relevant documentation on behalf of this group of claimants. As a reminder, the requested documents for this group of claimants is any and all documentation you have confirming you were assessed under the NRP between May 5, 2006 to July 1, 2011 and experienced harm during the stated time period. The types of documentation that may be responsive include but are not limited to:

- any Orders or Decisions stating that an EEO discrimination complaint you filed between 2006-2011 has or should be subsumed into the matter titled Sandra McConnell v. USPS, Agency No. 4B-140-0062-06; and/or

documentation you received during the NRP review process between May 5, 2006 to July 1, 2011, including for example: (i) Employee Leave Information Letter, Partial Day; (ii) letter scheduling you to appear for a meeting to discuss the next step in the National Reassessment Process; and (iii) letter indicating Notice of No Work Available.

If you have not yet submitted the requested documentation, or have any additional documentation, it must be received by our office by no later than August 24, 2023. You may send the relevant documents via email at NRPClassaction@theemploymentattorneys.com or via fax at 585-272-0574.

### August 4, 2023 – Status Update

For those claimants with a claim number beginning with 200 (M-200XXX), as we noted in our recent correspondence, we requested an extension for the Administrative Judge's recent Order, however, no extension was granted. That means, consistent with the Order, our offices will submit all relevant documentation today. We will ask for the opportunity to supplement the record and add further documentation, but that is within the Administrative Judge's discretion.

### August 2, 2023 – Message from Jeremy Wright of Kator, Parks, Weiser & Wright, PLLC:

For anyone who may have received an email that looks like it came from me today, it was not actually sent by me, so I would recommend you go ahead and delete it. We apologize for any confusion this may have caused.

### July 10, 2023 – Status Update

The Administrative Judge held another video status conference with us on July 10, 2023. The Administrative Judge said that the EEOC plans to resolve in the next few months the pending procedural questions regarding whether certain Claimants were untimely in filing their claims. After that issue has been addressed, the Administrative Judge stated that the EEOC plans to begin designating certain Claimants for hearings on their relief claims.

On July 3, 2023, we filed a comprehensive response regarding our clients who had been identified as possibly untimely by the Postal Service. All available evidence regarding timeliness was submitted by us at that time.

The USPS attorneys attempted to slow down the process by seeking to submit new briefing in response to our July 3 submission. The Administrative Judge refused to allow for more delay, and told the Agency that any new argument on the matter would be stricken from the record.

Based on the Administrative Judge's comments, we believe that we should see some real progress in 2023 toward EEOC decisions on some of the individual claims in this case. As always, please continue to monitor this website for updates.

### June 23, 2023 – Status Update

The Administrative Judge has scheduled the next conference with our offices and the Agency for Monday, July 10th. The order setting this conference does not indicate the subject that the Judge intends to address. Please check back in on the website following the conference for an update.

### June 2023 – Status Update

As many of you are aware, USPS has argued that a number of claimants were untimely in submitting their initial claim form to the USPS P.O. Box in Greenwood Village, Colorado. USPS has argued that these identified claimants failed to meet the filing deadline beginning in approximately April/May 2018. We are providing this update regarding the latest developments in connection with the issue of alleged untimeliness.

By way of brief background, in or about January 2023, we attempted notification (via email and first-class mail, whenever possible) of each claimant represented by us who was identified by USPS as being potentially untimely. In other words, if you are represented by us and USPS identified your claim as allegedly untimely, then we reached out to you on that issue, and provided instructions to you. Of note, a majority of the claimants in this case WERE NOT identified by USPS as being allegedly untimely.

In June 2023, the Administrative Judge issued several Notices of Intent to Dismiss Untimely Claims of Relief. In these notices, the Administrative Judge states that unless claimants who were identified by USPS as potentially untimely can establish that their claims were timely or demonstrate good cause why they should be accepted even though they were untimely, such claims will be dismissed. Both parties have a deadline of June 30, 2023 to respond to the Administrative Judge.

The Administrative Judge has provided a spreadsheet to the parties, along with directions for organizing the information and documents in a specific manner for consideration by the Administrative Judge. Our offices are currently busy preparing such documentation/information for the Administrative Judge.

It should be emphasized that the Administrative Judge has not yet issued any final decisions regarding dismissal on the basis of untimeliness. We continue to advocate on behalf of all claimants who are represented by us.

If you have any questions about this issue, including whether your claim is on the untimely list, please contact us at nrpclassaction@theemploymentattorneys.com or 585-272-0540.

## March 8, 2023 – Status Update

The Administrative Judge held another video status conference with us. The Administrative Judge said that the EEOC has plans in place to move forward with the review of claims, and that decisions are planned to be issued in the coming months. The Administrative Judge did not provide details on which claims would be decided first, other than to announce that any claims that had been withdrawn by claimants would be dismissed in the next few weeks or so. (We have been receiving orders from the EEOC dismissing claims that were withdrawn by claimants.)

The Agency attorneys filed a list of allegedly untimely claims in December 2022. We contacted each of our clients who were included on the list. We recently filed our response to the Agency's defense, providing legal argument and additional evidence to rebut the Agency's allegations. The Agency requested that the Administrative Judge make a decision on the untimeliness defense before issuing any other decisions. The Administrative Judge has not yet issued a ruling on this request by the Agency.

Based on the Administrative Judge's comments, we believe that we should see some real progress in 2023 toward EEOC decisions on the individual claims in this case. As always, please continue to monitor this website for updates.

## January 23, 2023 – Status Update

The Administrative Judge held another video status conference with us today, and shared some news about the EEOC's plans for moving this case forward.

First, the Administrative Judge noted the concerns that we submitted regarding the EEOC's mailing and website. The Administrative Judge thanked us for providing the information, and told us that the EEOC already addressed some of the concerns that we raised. For example, we reported that there had been some confusing information provided by the EEOC's administrator. The judge informed us that the EEOC had addressed the issues to make sure that everything would be correct moving forward. While small logistical concerns routinely come up as part of large-scale administration processes, the Administrative Judge assured us that the EEOC is taking care to provide effective oversight and ensure a proper process.

Second, the Administrative Judge noted that review of claims has begun, and that she hopes to begin, if possible, issuing orders and decisions on claims in the coming months! The judge noted that there would need to be hearings to address questions on some claims, but that she believed that she had sufficient information on some claims to issue relief decisions. Nevertheless, please keep in mind that the Postal Service can, and probably will, appeal every decision by the Administrative Judge that is favorable to any claimant. We will continue to provide updates on this website when we learn additional information about orders or decisions being issued by the Administrative Judge on claims.

The Administrative Judge granted our request for additional time to submit evidence in response to the USPS argument that some claims missed the filing deadline. You should receive a mailing and e-mail from us if USPS has argued that your claim was untimely. If you have received that notice from us, please provide the requested information to us as soon as possible, but no later than February 10, 2023.

We believe that the Administrative Judge's news from today means that we should see some real progress in 2023 toward a final result for your claim in this case. As always, please continue to monitor this website for any updates.

## January 11, 2023 – Status Update

As a reminder, the EEOC website through the third-party administrator is not associated with our office. This means that if you have updated your contact information, including address, phone number, email address, and/or name, through the EEOC website (www.eeoc-nrpphase2.com) or by calling the third party number identified in the EEOC's recent

communication, you must also contact our office as well to update the information. You can give our office a call at 585-272-0540 or email us at nrpclassaction@theemploymentattorneys.com.

Additionally, if you have recently updated your contact information with our office, please make sure to also update your information with the EEOC through the third party administrator. This can be done by going to the website, www.eeoc-nrpphase2.com, or by calling 877-465-4142.

### December 28, 2022 – Status Update

Our attorneys have just learned that the EEOC has begun sending out notices to claimants regarding the EEOC's website related to this case. These notices from the EEOC are being issued via email, and apparently will also be sent from the EEOC by regular mail.

Important: the phone number referenced in the notice from the EEOC should read 1-877-465-4142, and the correct website link is as follows: https://www.eeoc-nrpphase2.com/Home/portalid/0.

According to the notice from the EEOC, each claimant has been provided a unique log-in identifier, and each claimant is being asked to confirm their contact information within 30 days.

Even though we have not had any role in the preparation of these notices from the EEOC, we want to do whatever we can to help the EEOC as it processes the claims for relief. We strongly encourage timely cooperation if you receive the notice from the EEOC.

If you have trouble accessing the website referenced in the notice from the EEOC, you can call 877-465-4142 for assistance.

If you have not yet received the notice from the EEOC, please continue to be patient for a few more days. Please continue to closely monitor the website www.nrpclassaction.com in the coming days as our attorneys continue to provide additional guidance.

### December 19, 2022 – Status Update

The Administrative Judge held a video status conference today, and shared some news about the EEOC's plans for moving this case forward.

First, the Judge announced that the special website created for this case will be posted and active in the coming weeks. She said that in the coming weeks, the EEOC will issue a notice to all of the claimants about the EEOC website. We do not yet know what will be on the EEOC website, or when this will all happen. When the EEOC notice is issued, we will post a copy of it on this website.

Second, the Administrative Judge also discussed the group of individuals that the Agency has now identified as untimely. Meaning, the Agency has identified certain individuals they believe did not submit a timely claim to NEEOSIO. The Administrative Judge has asked our offices to provide any evidence that claims were timely. In the coming weeks, our offices will be working with claimants to gather the necessary information for the Administrative Judge.

Third, the Judge stated that the EEOC plans to begin hearings on some claims sometime in the middle of 2023. She said that not all claims will receive a hearing, but that the EEOC would choose certain claims to be heard by EEOC Administrative Judges. We do not know which claimants will have their claims selected for a hearing, how the EEOC will make those selections, or how the hearings will work. When we have additional details on the EEOC's hearing process for this case, we will post those details on this website.

We wish all of you a joyous holiday season. We sincerely hope that the Administrative Judge's news from today means that we will all see some real progress in 2023 toward a final result for your claim in this case. We continue to fight for justice for all of the claimants in this case. And as always, please continue to monitor this website for any important updates.

### November 28, 2022 – Status Update

Today we had another video conference call with the Administrative Judge. In advance of this conference, per the request of the Administrative Judge, our offices re-submitted all claimant related documents for her consideration. Our offices and the Postal Service also worked on adding additional claimant information to the spreadsheet. The call was fairly brief. The Judge asked a few clarifying questions about the submissions. The Judge also set a briefing schedule for a sanctions motion recently filed by our offices against the Postal Service. Our offices filed a motion for sanctions regarding the repeated failure

of the Postal Service to comply with the Administrative Judge's Order to produce a single spreadsheet with all claimant information and instead hiding behind an argument already rejected by the Judge. We will provide an update as soon as a decision is issued regarding our motion for sanctions.

Before concluding the call, the Administrative Judge indicated that the EEOC plans to have a website available in the coming weeks that will be specifically devoted to this case. She also indicated that the EEOC intends to send a notice out of such website. To the best of our knowledge, the EEOC has never created a website devoted to a single case. We currently have no information regarding the nature of the EEOC's website or the notice, so unfortunately cannot yet provide answers to questions you may have, but we will provide a detailed update as soon as we have additional information.

As a general reminder: if you hired our law firms to represent you, we will respond to any and all requests by the EEOC or the Postal Service for information about your claim, and our offices will contact you if more information is needed. In other words, please do not contact the EEOC or the Postal Service about your claim without checking with us first. Please call us if you have any questions about this.

As 2022 nears its conclusion, we note that all of us had hoped for more progress in this case. Our goal, like yours, is to continue fighting for a fair and reasonable outcome. Put another way, for all claimants who hired our law firms, we will not cease our fight on your behalf until the Postal Service provides a fair and reasonable resolution, or there is a final EEOC decision on your claim, whichever occurs first. Unfortunately, the Postal Service continues to dispute every single claim. And, while the Administrative Judge continues her admirable efforts to make meaningful progress on this case, the simple fact remains that the EEOC has never dealt with litigation like this, with over 28,000 claimants. We are cautiously optimistic that 2023 will be a year of significant forward movement on your claims.

We remain extremely grateful to all who have hired us to represent their interests in this fight against the Postal Service. We have notched many milestone successes in this case since 2006. Even though we cannot predict with certainty every twist and turn on the road ahead, we remain convinced that a fair and reasonable outcome can be achieved, if we continue forward with persistence and resolve.

Please check this website frequently for updates. And please call or email us if you have questions.

### October 31, 2022 – Status Update

Today, we had another video conference call with the Administrative Judge, lasting more than one hour. Like the other recent conferences, this one focused on the spreadsheet that the parties have been compiling for the last several months, at the direction of the Administrative Judge. The Administrative Judge largely asked her questions of the Agency, and ordered that certain missing information be added to the spreadsheet promptly. Our offices argued that the Agency's failure to provide certain information fits a pattern of unnecessary delay on the Agency's part. The Administrative Judge made very clear that further delays would not be well-received, and that she expects to see the completed spreadsheet by no later than November 18, 2022.

The next status conference is November 28, 2022. Please continue to check our website for updates.

### September 2022 – Status Update

On September 26, 2022, Phase 1 Class Counsel and the Agency had a video conference with the Administrative Judge where the spreadsheet project was discussed in detail. Prior to the conference, the EEOC began analyzing the data at an overview level, and was prepared with a series of questions for both sides about the submitted data.

The conference lasted a little over two hours. At the conclusion, the Administrative Judge directed both sides to submit certain revisions to the spreadsheet by no later than October 21, 2022. Among the revisions requested of the Agency was that all claimants without claim numbers are to be assigned claim numbers, and any columns or individuals previously removed by the Agency would be restored. In addition, the Administrative Judge has also requested that our offices eliminate a small number of duplicate entries. Furthermore, the Administrative Judge directed both parties to resubmit an additional copy of claimant documents submitted previously.

The next status conference is scheduled for October 31, 2022 at 11:00 am. Please continue to monitor our website for updates.

### August 2022 – Status Update

Since the Agency has produced their portion of the spreadsheet, our attorneys have not only been working on their portions of the spreadsheet, but have also begun raising concerns with the Agency as to deficiencies in their portion of the spreadsheet. Due to these deficiencies and in the interest of ensuring that the spreadsheet is complete and accurate as ordered by the EEOC, the Administrative Judge granted a brief 30 day extension to complete their portion of the spreadsheet and to continue addressing deficiencies with the Agency. In submitting such a request, Phase 1 Class Counsel took this opportunity to alert the EEOC about the deficiencies in the Agency's portion of the spreadsheet. Phase 1 Class Counsel will seek further intervention from the EEOC in the event the Agency does not resolve the noted deficiencies.

Please continue to check the website for updates, but based on extension, the spreadsheet will now be completed with all claimants who have retained our law firm in this case, and submitted to the EEOC on September 18, 2022.

### July 2022 – Status Update

On July 15, 2022, USPS submitted a spreadsheet to the EEOC Administrative Judge, and also to us as Phase 1 Class Counsel. During the coming weeks, we will not only be analyzing the spreadsheet for the Agency's compliance with the Judge's Order, but we will also be supplementing the spreadsheet with the information the EEOC has asked us to compile. Please continue to check this website for updates.

### May 2022 – Status Update

In advance of the May 12, 2022 status conference, the EEOC Administrative Judge circulated a new spreadsheet with additional information requested. In particular, the revised spreadsheet now provides an opportunity for Phase 1 Class Counsel, our offices, to review and comment on the Agency's designation of claims for each claimant.

At the May 12, 2022 status conference, the EEOC Administrative Judge was once again joined by EEOC Administrative Judge McCauley and the data attorney from the EEOC. The Judge set deadlines by which the parties must submit their portions of the spreadsheet. The Agency must complete their portion by June 15, 2022 and Phase 1 Class Counsel shall complete their portion by July 15, 2022. The comprehensive spreadsheet must be filed by July 18, 2022.

We understand that there is some confusion as to the date when the spreadsheet submissions are due. We understand any references by the EEOC Administrative Judge to the year 2020 was made in error and instead refers to 2022.

Phase 1 Class Counsel asked about whether special masters will be utilized going forward, and requested additional information about the process that will be utilized in order to evaluate the claims. The EEOC Administrative Judge responded that she was not able to comment on those issues at this time, but emphasized that she (and others within the EEOC) are working on this matter each week and are committed to moving things forward as quickly as possible.

Please continue to monitor our website for more updates in the coming weeks. If you have any updated contact information and have not yet provided it to our office, please call us at 585-272-0540 or email us at NRPClassAction@theemploymentattorneys.com.

### April 20, 2022 – Status Update

Today we heard from EEOC Administrative Judge regarding the ongoing effort to compile claims information in an excel format. In particular, Judge Roberts-Draper indicated that she reviewed all the information submitted and ultimately ordered the parties to each submit certain information about claimants in an excel spreadsheet. In particular, Phase 1 Class Counsel is responsible for providing updated contact information, including address, telephone number and email address, as well as whether an indication of any deceased claimants. The Agency is responsible for providing the remainder of the information, which includes but is not limited to: date of hire; separation date; separation reason; and which claims are alleged by claimant and which claims the Agency disputes. All information is ordered to be produced to Judge Roberts-Draper on or before Wednesday, June 8, 2022.

Additionally, Judge Roberts-Draper also scheduled a status conference with the Agency and Phase 1 Class Counsel for May 12, 2022 at 11:00 am. An update will be provided following the May 12, 2022 status conference.

### April 13, 2022 – Status Update

Following the EEOC Administrative Judge's request, the parties each provided additional information to assist in the process to evaluate claimant relief. Since providing the requested information, we have not yet heard back from the EEOC Administrative Judge, but based on the last conference, we expect to hear from her in the coming weeks.

We have received many inquiries as to whether the EEOC Administrative Judge intends to utilize the assistance of special masters. During the March 4, 2022 conference with the EEOC Administrative Judge, she indicated that the special master issue is still under "advisement." We understand this to mean that her in-depth questioning regarding the Postal Service's access to certain information will assist her in determining the best and most efficient path forward, including as to whether special masters should be utilized. As mentioned in our March 4, 2022 update, the EEOC Administrative Judge was joined at the last conference by an EEOC data person, as well as another Administrative Judge. We are hopeful that these additional resources will assist the Administrative Judge in the evaluation of the more than 28,000 claims that were filed.

Please continue to check our website for updates in the coming weeks.

### March 4, 2022 – Status Update – Status Conference

Today we had a very productive two hour video call with EEOC Administrative Judge Roberts-Draper regarding a process to move this case forward. The EEOC Administrative Judge explained that the purpose of the call was to explore the types of claim information that the Agency and our offices could provide to the EEOC in order to move the process forward. In particular, the EEOC Administrative Judge wants to have the relevant information in a spreadsheet format that would allow the Judge to easily access the information, with a goal of moving forward with the process of claim determination.

Significantly, the EEOC Administrative Judge made clear that only Thomas & Solomon LLP and Kator, Parks, Weiser & Harris PLLC, along with the Agency, will be working directly with the Judge both during the call itself and as we move forward with this process. By doing so, the EEOC Administrative Judge is hopeful that unnecessary delays are avoided. As Phase 1 Class Counsel, responsible for the leading the charge that led to the EEOC's finding that the Agency created and implemented a program that discriminated against thousands of US Postal employees, our offices are honored to lead the fight during Phase II to ensure that there is a fair and efficient process designed to evaluate claimants and the relief they may be entitled to.

During the video call, the Administrative Judge asked the Agency a series of questions as to their ability to quickly access a variety of information needed in order to evaluate claimants and to produce it in an excel format for the EEOC. While the Agency once again attempted to further delay the matter by claiming that some of the data such as disability status was not something they had access to in the requested format, our offices were quick to point out systems in which such information could be accessed by the Postal Service. As a result of our identification of various processes and systems that could easily be utilized to gather the information needed by the EEOC, the Agency was ordered to provide an update to the EEOC Administrative Judge within a week as to their ability to access and produce such information. Our offices also agreed to provide some additional information that should assist the process which was obtained from the Postal Service during the course of the litigation and should provide the EEOC Judge with much of the requested information.

Please note: the Judge emphasized that the EEOC wants to have the most current contact information for each claimant. If you are represented by our offices and have changed your contact information, including telephone number, mailing address, or email address, please make sure to promptly update such information with our offices. You may email our office at nrpclassaction@theemploymentattorneys.com or call us at 585-272-0540.

During the call, we voiced the frustration of our clients as to the continuous delay tactics used by the Agency that has made this process nearly fifteen years long and not yet complete. We emphasized that our clients have one simple goal: a just resolution for their claims of discrimination under the NRP. We also noted that even their responses to the EEOC Administrative Judge's questioning was further demonstration of their pattern of behavior: delay, deny, delay, deny. We promised the Judge we would do everything we can to help the EEOC issue claim determinations as soon as possible.

It is worth noting that on the video call was EEOC Administrative Judge McCauley and a data person from the EEOC. While neither spoke during the video call, EEOC Administrative Judge Roberts-Draper did take several breaks in order to confer with her team and review her notes.

At the end of today's status conference, the Judge noted that there will be subsequent conferences to continue to ensure that the EEOC has all of the information needed to evaluate claimant relief. The Judge said she will schedule the next conference after she evaluates the information provided in connection with today's call.

As the attorneys who initially filed the charge that began this action back in 2007, we understand this has been a long and frustrating road, but please know that we will continue to fight for each of our claimants. Because of each of you and your willingness to speak out about the injustices you and others like you faced, the Agency has been found to have discriminated against injured employees and now they must face the consequences for their actions and provide relief to

those people who are found to have been injured! We eagerly await the next conference with the Court and will provide an update when one has been scheduled.

## February 2022 – Status Update – STATUS CONFERENCE SET BY EEOC

The EEOC Administrative Judge has scheduled a video Status Conference for the attorneys and representatives on March 4, 2022. The Judge has indicated that during the Status Conference we may be provided information about the EEOC's plan to move the claims process forward. It is also expected that the Judge and the parties will discuss the large volume of information related to the claims process, and the possibility of organizing relevant information in an electronic spreadsheet format. We will post an update on this website shortly after the Status Conference.

As a reminder, the EEOC has not issued any decisions on any of the claims. The Postal Service continues to vigorously oppose all forward movement on the Judge's Order regarding Special Masters. And the Postal Service has not paid any attorney's fees to our firms for the claims process – not one dollar.

At the upcoming Status Conference we hope to learn more about the EEOC's plan to move this process forward. We will continue to oppose the Postal Service's ceaseless efforts to delay payments to Class Member claimants.

Please check this website for an update after the Status Conference on March 4, 2022. Thank you for your continued patience through this process, and for your strong perseverance in the face of the Postal Service's stalling tactics.

## August 2021 – Status Update

Recently many claimants have been asking about the timeline as to when claims will be evaluated. Unfortunately, while it has been more than a year since the Judge initially ordered that up to five Special Masters be used in this process, no claims have yet been evaluated and we do not believe that any large volume of claims will be evaluated by fall of 2021. Indeed, while our attorneys submitted their list of five Special Master candidates, the Postal Service has attempted to delay things by filing objections and multiple appeals to prevent this process from moving forward. While each of these attempts to delay the action have been rejected, the Administrative Judge has not yet selected a Special Master. Until the Special Master (or Special Masters) have been appointed, the initial batch of claimants to be reviewed cannot be selected and thus no claims can be evaluated. We are hopeful though that in the near future we will hear from the Administrative Judge so that the process can move forward. We understand that this has been a long and frustrating journey, but as your attorneys, we will continue to take every action possible to help the Judge move this process forward! Please continue to check our website for updates in the coming months and as always, feel free to give us a call as to where things stand.

## July 2021 – Status Update

Pursuant to the Administrative Judge's Order approving the use of Special Masters, Thomas & Solomon LLP and Kator, Parks, Weiser & Harris PLLC have already submitted a list of five potential Special Masters who have great experience in handling large number of claims similar to the claims in this case. At this time, the Administrative Judge has not yet made her selection of Special Masters. With the recent dismissals of the USPS "final action" and appeals of the Administrative Judge's orders, we are hopeful that the Special Masters will be selected soon and the claims review process will commence in the very near future.

## May 17, 2021 – Status Update

### EEOC DISMISSES ANOTHER USPS APPEAL

The EEOC Office of Federal Operations (EEOC-OFO) dismissed another USPS "final action" and appeal of the Administrative Judge's orders regarding the use of Special Masters to assist with review of the claims. This decision by EEOC-OFO means that the case remains fully before the EEOC Administrative Judge, and that she can use her discretion to find an appropriate method to have the claims reviewed and decided. The USPS attorneys sought to use its repeated appeals as a way to stall the case further and challenge the Administrative Judge's authority. With this fast, favorable decision by EEOC-OFO, the course is now set to have the claims review process commence in the very near future.

Please continue to monitor this website for updates on the case. Thank you for your continued patience!

## March 30, 2021 – Status Update

### Administrative Judge's Order Rejecting Postal Service's Encouraging of Claimants to Request Final Agency Decision

In response to the Administrative Judge's February Order setting out a process to review claims by the use of Special Masters, the Postal Service filed a motion seeking to both delay the case and encourage as many class members as possible to withdraw from the case.

In particular, the Postal Service wanted to encourage claimants to request Final Agency Decisions (or FAD) in order to drop out of this case and start over.

On March 22, 2021, the Judge issued an Order squarely rejecting the Postal Service's motion. The Judge's Order explains that "the very question of FADs is premature, baffling and utterly irrelevant at this point." The Judge emphasized that the Postal Service was required to wait for the Judge to issue a decision on claimant relief before issuing a FAD. The Judge's Order says, "no claimant is entitled to a FAD until the AJ issues a decision on the disputed claims. Since no decision has been issued on any of the disputed claims, NO ONE IS ENTITLED TO A FAD. NO ONE SHOULD BE REQUESTING A FAD and THE AGENCY SHOULD NOT BE ISSUING FADs."

The Judge went on to explain that although claimants themselves can seek a FAD and thus leave this case, the Judge also said it is:

> unclear why any claimant would opt out of the class and seek a FAD. The purpose of this class action is to remedy a harm that has adversely affected over 28,000 individuals nationwide in the Postal Service. The value and strength of the lawsuit is that there are so many people who the Commission has found to have been harmed by the NRP. How is withdrawing from the class and requesting a FAD beneficial to the individual claimant (who risks getting nothing from the Agency) or to the class (whose numbers will quickly lessen)?

These are strong words from the Judge, indicating her resolve to push forward with the claims process as fast as possible.

On a related issue, a few claimants have asked if they can both request a FAD and still get the advantages of this case. The Judge answered this question explicitly, and the answer is "No." The Judge noted that there are two ways this case will be resolved: (1) either through the special master process; **OR** (2) if a claimant opts out and seeks a FAD. However, the Judge emphasized the perils of seeking a FAD: "If a claimant seeks a FAD and gets nothing, the process of appeal and hearings and evidence starts all over again for that individual complaint and if there has been a settlement in the McConnell Class Action, said Complaint runs the risk of being foreclosed for any review of their claims or compensation from any prospective settlement."

Although as discussed above the Judge did not think it was a good idea to opt-out of this case, she noted that people have the legal right to do so. The Judge set forth what the opt out claimant would need to expressly state in writing:

> that claimant is aware that they are seeking a Final Agency Decision (FAD) on whether they are entitled to damages and to how much they are entitled, that the FAD may or may not be in their favor, and if so, claimant has the right to seek an appeal from OFO, said appeal may or may not be reviewed given that there is a McConnell Class Action Remedial Phase litigation. If claimant's appeal is heard by OFO, the Agency's decision can be upheld or the case can be remanded to an AJ in that claimant's geographical area to determine damages.

As your attorneys, we agree with the Judge's negative view of the opt-out process. We strongly recommend that you do not opt out of this process. As the Judge noted in her decision, "the value and strength of the lawsuit is that there are so many people who the Commission has found to have been harmed by the NRP."

### March 26, 2021 – Status Update

#### EEOC DISMISSES USPS APPEAL

With a letter order on March 26, 2021, the EEOC Office of Federal Operations (EEOC-OFO) dismissed the USPS "final action" and appeal of the Administrative Judge's orders regarding the use of Special Masters to assist with review of the claims. This decision by EEOC-OFO means that the case remains fully before the EEOC Administrative Judge, and that she can use her discretion to find an appropriate method to have the claims reviewed and decided. The USPS attorneys sought to use the USPS March 17, 2021 appeal as a way to stall the case further and challenge the Administrative Judge's authority. With this fast, favorable decision by EEOC-OFO, the course is now set to have the claims review process commence in the very near future.

Please continue to monitor this website for updates on the case. Thank you for your continued patience!

### March 22, 2021 – Status Update

As noted in our February 2021 update, the Judge recently issued an Order setting out a process for reviewing claims in this case.

For those claimants represented by Thomas & Solomon and Kator, Parks, Weiser & Harris PLLC, we have recorded a message that not only provides a further update of the Judge's Order, but also responds to many frequently asked questions. In order to access the recorded message, you will need to call a special phone number. If you are represented by our offices, you have received (or soon will receive) an automated telephone call from us, providing you with the special telephone number for you to call and hear the recording. If you did not receive an automated call from us with the special number for you to call to hear the recording, please reach out via email at nrpclassaction@theemploymentattorneys.com or by telephone at 585-272-0540.

Please know that the system with our recorded message can only handle a certain amount of callers at any given time, so please be patient if you do not get through the first time you call. The recording will be available 24 hours a day (7 days a week) until April 9, 2021.

If you intend to listen to the entire recording, please plan for a recording that lasts 30-45 minutes.

There will be a Spanish translation of the recording also available at the same number. If you are a person who is hard of hearing or deaf, and you need an alternative method of receiving the information, please reach out to our office directly via email at nrpclassaction@theemploymentattorneys.com or by telephone at 585-272-0540.

### March 19, 2021 – Status Update

#### USPS SEEKS TO STALL CASE WITH IMPROPER APPEAL

The USPS attorneys are attempting to further delay the awards in this case by filing an improper appeal in the middle of the process. USPS actually tried this in 2013 in this case, and the untimely appeal was rejected. We will work to ensure that the EEOC again swiftly rejects the improper appeal, and work to have the EEOC Administrative Judge press forward with an efficient review process without delay. Please continue to monitor this website for further updates.

### March 2021 – Status Update

#### List of Special Masters Filed with EEOC Judge

On March 8, 2021, we followed the EEOC Administrative Judge's orders, and filed a list of five potential Special Masters who can assist with processing the claims in this case. We conducted extensive research, and came up with a list of five Special Masters who have great experience at reviewing large numbers of claims similar to the claims in this case. And they have all been able to complete a review of large numbers of claims in a reasonable amount of time. We hope that this will assist the Administrative Judge in getting all the claims in this case reviewed and decided in an efficient manner. As we learn more about the Administrative Judge's plans ahead, we will provide updates on this website. Thank you for all of your continued patience with this case, and we hope to have more progress to report to everyone soon.

### February 2021 – Status Update

#### IMPORTANT NEW ORDER FROM JUDGE

The EEOC Administrative Judge issued a new order regarding the processing of claims in this case. The Judge reiterated that Special Masters will be used to speed up the claim review process, and the Judge rejected all USPS objections to the use of Special Masters. The Judge also modified her previous order as we requested, eliminating the need for claimants to pay for the Special Masters. Citing to our legal briefing, the Judge clarified that USPS must pay all charges for the Special Masters. This is a big victory for all claimants, and a giant step toward conclusion of this process.

To recap: in July 2020 the Judge issued an order setting up the use of Special Masters to speed up the claim review process, but USPS argued that the Judge lacked authority to use Special Masters and could not force USPS to pay for Special Masters; the Judge's recent order, citing our legal briefing, brushed aside USPS objections. As explained by the Judge in the recent order:

"[T]he U.S. Postal Service was found liable for creating and implementing a years-long, nation-wide program that discriminated against thousands of disabled USPS employees. The Agency has necessitated the referral to Special Masters because it has disputed every single claim for damages and argues that the Commission has to hear and decide all 29,000

disputed claims, knowing that the Commission has limited resources to do so and such a task would be near impossible to complete, effectively creating an insurmountable impasse."

In our view, this order reflects the Judge's determination to press forward as fast as possible despite all efforts by USPS to delay and disrupt the claim review process.

**For our clients, we are planning to have a recorded call or video later in the next month where we can answer questions and discuss the next steps in the process**. We will also address the risks of leaving the EEO process and starting your case all over again in federal court, *something we strongly recommend against without talking to a member of the legal team first.* Clients who would like to submit questions for us to address, please send your questions via email to nrpclassaction@theemploymentattorneys.com or send us a letter to Thomas & Solomon LLP, 693 East Avenue, Rochester, NY 14607. **Please continue to monitor the website for further updates**.

### December 2020 – Status Update

We wanted to reach out and give a quick update on the case, and answer some questions that have been raised. The claims, evidence, and legal briefs for all of our clients' relief claims have been submitted to the EEOC Administrative Judge. The Judge has not yet made clear exactly how she plans to move forward with reviewing the information or issuing relief decisions. The Judge set up a course of review that would have had outside masters review a number of claims, but that approach seems to have been stalled out due to USPS objections. We have presented the Judge with many options on ways to quickly move the relief process forward, and we continue to do everything we can to help get relief into your hands.

Our goal is to get this matter resolved in a fair way as quickly as possible. We hope to have some good progress on final awards during 2021, and we will continue to post updates on this website.

We thank you all for your continued patience with this process. We share your frustration with how long this is taking, and we share your anger with the Postal Service's continued efforts to delay justice in this case. Please know that we are fighting for you, just as we have done for over 10 years.

Here are answers to some questions that have been presented by a number of the class members:

### What if I move or change my contact information?

For our clients, please provide your updated contact information to us. The best way to provide this information is to email us at nrpclassaction@theemploymentattorneys.com. We keep track of our clients' contact information, and we can provide that to USPS or the EEOC Administrative Judge when they need it.

### Will my claim continue if I die?

First, please know that we will continue fighting to get you the best possible award. We are dedicated to achieving the best results for you in this case, and we will not let the USPS game of dragging this process out free them from their legal obligations.

Your claim in this case is a personal asset. Upon your death, all of your assets will pass along, either under the terms of a will or (if you have no will) pursuant to what the law prescribes. Each state has different laws governing this issue, and we recommend that you consult with someone in your area about planning your estate.

Unfortunately, some of our clients in this case have passed away. We notified the Judge about this, and argued that this is yet another reason to move this process toward a quick resolution.

### Can I be reinstated to my USPS job now while this relief process is ongoing?

There is no way currently for us to get you back in your position until the EEOC Administrative Judge issues an order. If it is found that you meet the legal criteria for reinstatement, the Judge can order USPS to give you back the job you held before the NRP.

### November 2020 – Status Update

There has been no confirmation yet from the EEOC judge on whether Special Masters will be used to review a number of the claims. Various parties, including USPS, objected to terms of the judge's order, and it is our understanding that the judge is still considering those objections and possible changes to her plan to proceed. We continue to work with the judge

to move this case forward toward a final resolution. We will provide an update on this website when we learn more about the judge's decision regarding the process moving forward, and any other significant updates in the case. Thank you for all of your patience.

### July 2020 – Status Update

The Postal Service, as well as several other attorneys representing claimants, requested additional time to object to the Administrative Judge's Order approving the use of Special Masters. (Our firms did not seek any such extension.) To accommodate the requesting parties, the Administrative Judge extended the deadline to object until August 28, 2020. We continue to take every action we can to ensure that this process moves forward as quickly as possible. Please continue to monitor the website for updates.

### July 14, 2020 – Status Update

The Judge issued an important order today approving the use of Special Masters to assist the EEOC in reviewing the 28,000+ disputed claims in this case. Federal courts commonly use Special Masters to assist with adjudication of complex class actions. In this case, the EEOC will appoint five Special Masters who will each have broad discretion to recommend damages and relief for the claims presented to them.

Pursuant to today's Order, 2,200+ claimant names will be presented to the Special Masters in approximately three months, representing the initial batch of claims for review and consideration by the Special Masters. After that, the Special Masters will have no more than one year to issue recommended damages and relief for each claim presented to them.

Thus, by the Fall of 2021, the EEOC will have a large volume of claim valuations for this case, which will accelerate the EEOC's valuation of all the remaining claims. In addition, it is possible that the Special Masters' valuation of 2,200+ claims will help the parties evaluate possible settlement of claims. In this way, today's Order marks a significant advance toward individual relief awards for each claimant.

Today's Order is somewhat complicated, and it is possible that the Judge will issue revisions as the process moves forward. Nevertheless, today's Order reflects the Judge's strong desire to move the process forward decisively.

Please continue to check this website for updates. Thank you for your cooperation and patience through this lengthy process.

### May 2020 – Status Update

While Covid-19 continues to keep our office building closed, please know that we are still actively working on this case from our homes. Similarly, the Administrative Judge has indicated that she is working remotely on this case (and others). We will continue to provide updates on this website as notable developments occur. We hope you and your loved ones are safe during these difficult times.

### March 2020 – Status Update

The claims process is still moving forward. Although the Covid-19 situation has caused the EEOC New York office to close, the Judge has assured us that her work on the case continues.

Our law offices have also been impacted by the Covid-19 situation. As a result of the Covid outbreak, and in accordance with state mandates, Thomas & Solomon's office is currently closed. However, attorneys and staff are working remotely, and we are monitoring our voicemail. Due to these changes, please be aware that there may be delays in our offices responding to any inquiries. Our attorneys continue to work on this case, and we are in regular contact with the Judge. We continue to take every action possible to help the Judge move this process forward.

Please continue to monitor this website for any updates.

### March 5, 2020 – Status Update – Deadline to Submit All Supplemental Documents to the Administrative Judge

As a reminder, if you have any additional documents that you would like to be included in the final production to the Administrative Judge, and you have not yet provided them to our office, **we must have them by March 6, 2020**. If you have any questions, please feel free to email us at nrpclassaction@theemploymentattorneys.com or call us at 585-272-0540.

**January 24, 2020 – Status Update – Status Conference**

In a relatively short status conference this afternoon, the EEOC Administrative Judge let everyone know that the process is slowly moving forward one step at a time. She set a deadline of March 31, 2020 to submit any and all supplemental documentation regarding claims. Therefore, if you have not already provided us with a Disability Form ("Supplemental Declaration Regarding Disability"), you must provide that form to us right away so that it can be filed by March 31. If you need another copy of the Disability Form to complete, please contact us at 585-272-0540. (If you have already completed that form and submitted it to us, there is no other action needed by you at this time.)

The Judge stated that she is in the process of organizing all of the claim records, and that she hopes to begin reviewing the substance of those claims later this Spring. She emphasized, as she has previously, that the process may take some time, due to the very large number of claims. She also stated that she will continue speaking to the lawyers during the next few months about the possibility of settlement. However, please keep in mind that the Postal Service has not yet made a settlement offer to resolve any of the claims in this case.

Again, if you have not yet provided us with a Disability Form ("Supplemental Declaration Regarding Disability"), you must provide that form to us right away so that it can be filed with the Judge by March 31.

**January 17, 2020 – Status Update – Pittman Settlement Letters**

It has come to our attention that a number of people who were Class Members in the Pittman v. USPS class action have been receiving letters from USPS about that settlement process. The letters state that the USPS has possession of your settlement claim form from the Pittman class action, and you can request a copy of the claim form from the USPS.

Please note that this does not directly relate to your claim in the NRP Class Action. We were not involved in the process of USPS accessing Pittman settlement documents, and those documents do not directly relate to the NRP Class Action.

We recommend that if you do receive a letter about the Pittman v. USPS class action, you request a copy of your claim form and retain it for your records. You can send a letter that states "I request a copy of my Claim Form from the Pittman class action," and provide your mailing address. You should mail this letter to:

USPS - NELU
600 17th Street, Suite 1705-S
Denver, CO 80202

There is no need at this time to send a copy of the Pittman claim form to our offices. We recommend that you retain the claim form documents for your records. For more information about the Pittman class action, please go to http://www.pittmanclass.com. Thank you.

**November 2019 – Status Update – Status Conference Held**

The EEOC Administrative Judge held a status conference on November 19, 2019.

The judge stressed that the EEOC is actively weighing different ways to move the process forward. When the judge provides information on how the claims process will be handled moving forward, we will post a new update on this website.

The judge directed that the USPS set up a website to post updates and orders in this case, and USPS announced that the website was now set up at www.uspsclassactionclaims.com.

A motion that was filed regarding claimants who had partially-accepted claims was discussed, and the judge set a schedule for the parties to submit written responses regarding the motion.

The next status conference is set for January 24, 2020.

**October 31, 2019 – Status Update – Keep us updated too**

In order to keep our internal records accurate, please continue to keep our office updated on any changes to your contact information or other significant life events, such as a diagnosis of a terminal illness or the filing of bankruptcy.

**October 22, 2019 – Status Update**

A status conference has been scheduled by the Administrative Judge for November 19, 2019 at 2:00 pm EST. Please continue to check the website for updates.

## September 27, 2019 – Status Update

The status conference scheduled for September 26, 2019 was cancelled by the Administrative Judge. No new date has been scheduled, but please continue to check the website for updates.

## September 3, 2019 – Status Update

Over the next few weeks, we will be sending out new forms to many of our clients to complete. These forms are very short, and most clients will be able to complete these forms in five minutes or less.

We are sending these forms to our clients because the Judge has raised a few questions, and these forms will provide the Judge with clear, concise answers. In other words, our clients should complete the forms and return them to us as soon as possible so we can help the Judge move forward in the claim review process.

Please note: we are using email to send these forms to our clients to the greatest extent possible. For those clients who have not provided us with an email address, we are sending the forms via first-class mail, with a postage-paid return envelope. Also, please note that not every client is being sent these forms at this time.

If you have any questions about the forms when you receive them, please contact us at 585-272-0540. Thank you as always for your cooperation and support during the claim review process.

## August 23, 2019 – Status Update

Earlier this week, the EEOC Judge spoke with our legal team about the possibility, in theory, for broad settlement of the claims for relief in this case. The Judge has repeatedly emphasized her strong desire to identify a path for prompt, fair resolution of valid claims for relief. We strongly agree with this goal, and we pledge to continue our advocacy on behalf of all the claimants that we represent. We greatly appreciate the Judge's efforts.

We have not spoken with USPS attorneys about settlement of any claims. The bottom line remains as before: there is no indication at this time that the Agency is prepared to make any settlement offer to any claimants. There is no need for you to take any action at this time regarding the possibility of settlement.

For better or worse, this case presents numerous potential impediments to wide-spread settlement. Our legal team has experience achieving successful class-wide settlements in complex cases, but we also have experience pushing forward with litigation if fair settlement cannot be reached with the other side. Fair settlement is not possible in every case, so we must be prepared for continued litigation of your claims.

Experience demonstrates that fair settlement in a case like this cannot be achieved without lengthy, complex negotiations lasting months or even years. We will continue to keep you posted on all major developments in the case.

Please check this website for updates. As always, we greatly appreciate your support and patience throughout this process.

## August 12, 2019 – Status Update

EEOC rules and guidelines require all parties to be willing to discuss the possibility of settlement with the EEOC Judge. Last Friday, Judge Roberts-Draper issued a schedule for talking to the lawyers about the possibility of settlement. However, there is no indication at this time that the Agency is prepared to make any settlement offer to any individual claimant. Thus, as of this time, nothing has changed in terms of possible settlement, and there is no need for you to take any action at this time regarding the possibility of settlement.

We are very grateful for the Judge's willingness to discuss the possibility of settlement. Our goal, as always, is to push for prompt appropriate relief for the victims of NRP discrimination. Settlement generally provides a much faster path to relief for the victims of discrimination, as opposed to the many years associated with continued litigation and appeals. However, settlement is not possible in every case. (For better or worse, the Postal Service has a reputation for preferring delay and continued litigation over prompt appropriate settlement.)

The bottom line is this: there is no indication at this time that the Agency is prepared to make any settlement offer to any individual claimant. Again, there is no need for you to take any action at this time regarding the possibility of settlement.

Please continue to check this website for updates, and thank you as always for your support and patience throughout this hard-fought case.

## August 7, 2019 – Status Update

Yesterday afternoon, the parties participated in a status conference with EEOC Judge Roberts-Draper. The call was very lengthy, lasting almost three hours. Judge Roberts-Draper indicated that she would issue a written order providing her decisions on some pending procedural motions. Here is a copy of the Order.

Of note, Judge Roberts-Draper continued to express a strong desire to expedite the claims process in order to provide appropriate relief to claimants. On the other hand, the Judge acknowledged the extraordinary difficulties associated with a case of this magnitude and complexity. In addition, the Judge made it clear that individual relief decisions would not be issued in the immediate future.

Please continue to check this website for updates, and thanks as always for your support and patience throughout this lengthy legal process.

## July 15, 2019 – Status Update – Claim Statements Filed

As of July 15, 2019, we have filed a legal brief (Statement) and evidence on behalf of all Claimants who are represented by our law firms. We organized and submitted all available documentation in accordance with the Case Management Order. The EEOC Judge now has submissions from both sides regarding relief for all Claimants.

The next status conference with the EEOC Judge is scheduled for August 2019. We will promptly update this website as soon as we have news to report.

Thank you for your support, assistance, and patience throughout this claims process. We hope that we are now a big step closer to seeing actual relief provided to all those harmed by the NRP.

Of note, we may request feedback or clarification from some Claimants in the next few weeks. If you receive a request for information from us, please reply as soon as possible. Thank you again for your cooperation and patience.

## June 2019 – Status Update – Submission Regarding "Partially Accepted" Claims

As you may be aware, USPS disputed every claim submitted in this case. On the other hand, USPS "partially accepted" some parts of a small percentage of claims (less than 2%). (Even in that small subset of claims, the Postal Service has not yet paid a single dollar to any claimant, to the best of our knowledge.) Recently, USPS asked the Judge to create a new, slower process for handling these "partially accepted" claims. Today we filed our response to the USPS filing, pointing out that the USPS proposal would slow down the processing of these claims for no good reason. Further, we urged the Judge to direct USPS to promptly provide claimants with the partial relief that USPS has already conceded in these claims. Under our proposal, the claimants who have already obtained partial concessions from USPS will receive the benefit of that relief now, while continuing to seek full recovery through the normal EEOC claim-adjudication process set forth in the Case Management Order.

The Judge has indicated a desire to resolve this issue promptly, if possible. We will provide an update to the website as soon as the Judge issues a decision. In the meantime, we continue to collect and organize a very large amount of claim information for timely submission to the Judge. If you receive a request from us for additional information, we urge you to respond as soon as possible. Thanks as always for your ongoing patience, and your assistance in this case.

## June 2019 – Status Update - USPS Provides Some NRP Files to Counsel

The Administrative Judge ordered USPS to provide certain missing NRP Activity File pages to the attorneys by May 28, 2019. USPS provided a limited number of the missing pages to counsel by that date, but refused to produce all of the files that we sought. We will promptly pursue this issue through the appropriate process. Please note that the Judge did not order USPS to provide a copy of the NRP Activity File documents directly to any claimants in the case.

As before, our plan is to submit the NRP Activity File documents, along with all the other evidence related to your claims, plus a legal brief, by the July 15, 2019 deadline set by the Administrative Judge. We are pressing forward and will not be deterred, despite this latest delay tactic by USPS.

## May 2019 – Status Update

A lengthy status conference was held with the Administrative Judge on May 13, 2019. As before, the EEOC Judge indicated a strong desire to move the claims process forward as quickly as possible. On the other hand, the Judge emphasized that the very large number of claimants in this case is unprecedented, and the Judge observed that she has a limited amount of time and resources to devote to this case. Continued patience is therefore required.

One important issue was decided during the status conference. We had asked that the Judge order USPS to provide the NRP Activity Files for every Claimant directly to the Judge and the Claimants themselves. The Judge partially granted our motion. Pursuant to the Judge's order, we will present the USPS attorneys with a list of all pages that were missing (or otherwise unreadable) from the USPS production of NRP Activity Files for Claimants who hired our law firms. The Judge ordered USPS to produce the identified documents to us no later than May 28, 2019. As a result of the Judge's order, we soon should have all NRP Activity Files in connection with our firms' clients. The Judge did not approve our request for NRP Activity Files to be provided regarding Claimants who did not hire our law firms, but said that she would wait to see the filings regarding those claims to determine whether she will order USPS to provide her with those NRP Activity Files at a later date.

In addition to issuing this order regarding NRP Activity Files, the EEOC Judge also explained that she is in the process of organizing all of the documents and information submitted by all claimants in this case. The Judge emphasized the very large volume of documentation submitted to her, and also indicated that limited time and assistance was available to her. The Judge expressed a hope that she could begin to review individual claims in late July or August. Again, the Judge demonstrated a strong desire to move the claims process forward as quickly as possible.

Please note that our firms (Thomas & Solomon, and Kator, Parks, Weiser & Harris) have stopped taking on new clients in this matter. If you have not previously retained our firms to represent you with your individual claim for relief, we are not now in a position to take on your case. If you have already hired our firms to represent you, we will be filing a legal brief in support of your claim.

Please continue to monitor this website for status updates. And if you are a client of our firms and you have not already done so, please complete and send to us a Declaration form as soon as possible (no later than May 28, 2019). (A copy of the Declaration form is available by clicking this link). Thank you!

### April 18, 2019 – Status Update – Motion Filed to Force USPS to Submit NRP Files

Our battle with the Postal Service continues regarding their refusal to provide evidence to the EEOC Judge in connection with individual claims for relief. We have asked the EEOC Judge to force the Postal Service to provide the NRP Files created by USPS management directly to the EEOC Judge and to each claimant, so that the EEOC Judge will have this highly-relevant information while assessing individual claims for relief.

To see the Motion that was filed, CLICK HERE.

We will post an update to this webpage as soon as a ruling is issued on this Motion.

### April 9, 2019 – Status Update for Our Clients

The Judge issued an order today, providing us with an extra 90 days to file submissions for our clients. With this clarification, we will continue the time-consuming process of preparing the claim submissions for the Judge's consideration. A significant amount of legal work remains to be accomplished as we press forward on every front.

If you have not yet provided a Declaration to us, you now have one last opportunity: if you provide us with a Declaration as soon as possible and no later than April 30, 2019, we will be able to include your Declaration in a timely submission to the Judge. We strongly encourage you to submit a completed Declaration to us in order to enhance your claim for monetary relief. You can access the Declaration (with instructions) by clicking here. This same deadline (April 30, 2019) applies to all supporting documentation you would like to submit to us.

Please note, if you reached out to our office recently and have not yet heard back from us, we are returning calls in the order received. Of course, please feel free to call our office again at 585-272-0540, and you may be able to get through.

### April 8, 2019 – Status Update

As previously reported, we have filed an extension request with the Judge. The Judge has indicated generally that a reasonable extension of time will be allowed, but the Judge has not yet issued a written order. As soon as the Judge issues a written ruling on our motion for extension of time, we will post updated information on this website.


The bottom-line is this: we will take all steps necessary to provide the Judge with timely submissions for all our clients.

Thanks to all who have returned Declarations to us. We are continuing the process of organizing this information as fast as possible.

In the past few weeks, we received a very large number of calls and emails related to this case. We continue to respond to each call and email in the order received. If you have not yet received a call back, you may try to call us again, and you may be able to get through. In any event, please rest assured that we will return all messages. As always, we greatly appreciate your patience during this process.

Many of you have asked about the next steps in the EEOC process. Because the enormous volume of individual claims is unprecedented at the EEOC, no one is completely certain about the precise path that the litigation will take. But the general direction is clear: the Judge wants to move the claim process forward as fast as possible. Accordingly, we are pressing forward on all fronts, and our goal remains as before: we seek full recovery for all our clients.

A reminder: before calling us, please review the following sources to see if your question has already been addressed: FAQs on this website; the instructions letter that accompanied the Declaration form; and the informational videos prepared by our firms (with links below).

## March 26, 2019 – Status Update on Deadlines

Previously, we urged all of our clients to complete and return Declaration forms to us no later than March 25, 2019. If you have already done so, thank you! If you have not yet completed and returned the Declaration form to us, please do so as soon as possible. If we receive your completed Declaration form by April 1, 2019, we will be able to satisfy the deadlines in this case.

In the past few days, we have received a very large number of calls and emails related to this case. We are responding to each call and email in the order received. It may take a few days for us to work through this large volume of inquiries, but we are dedicated to handling every question from our clients in a timely manner. We greatly appreciate your patience during this process.

Please note that the answers to many questions can be found on this website (see below), or in the instructions letter that accompanied the Declaration form, or in the informational videos prepared by our firms (with links below).

We have filed an extension request with the Judge. The Judge indicated during our status conference last week that an order regarding our filing deadline would be forthcoming soon. We will take all steps necessary to provide the Judge with timely submissions for all our clients. As soon as the Judge issues a ruling on our motion for extension of time, we will post updated information on this website.

During the status conference last week, the Judge clearly indicated a strong desire to move the claim process forward as fast as possible, while also appreciating the logistical challenges associated with a case involving 28,000+ individual claims. Like the Judge, our ongoing pledge to you is to continue pushing the claims process forward as far as possible and as fast as possible. Please don't be discouraged: we are closer than ever to obtaining the relief you deserve from the Postal Service!

## March 21, 2019 – Status Update

Click here to see the latest news on the case.

## March 11, 2019 – Status Update – CLAIM DECLARATION FORMS AVAILABLE NOW – COMPLETED DECLARATIONS MUST BE RETURNED VERY QUICKLY

### Here are 10 things for every claimant to know RIGHT NOW:

**1.** We are mailing Claim Declaration forms to all of the Class Members who have retained our firms to represent them in the claims process. You should receive a form in the mail by March 18, 2019. A copy of the Declaration form is being sent by e-mail to those Class Members who have sent us an e-mail address, and a copy of the Declaration form is also available by clicking here.

**2.** The Declaration form contains information that the EEOC Judge has requested for each claimant. Accordingly, you need to provide us with this information NOW in order to maintain your claims for relief from the Postal Service.

## STEWARD STATEMENT

The Union contends that Ms. Sharlene Jackson should not have been on Emergency Placement for eighteen days. Mr. Grady Stewart noted in the Emergency Placement letter that" A further decision shall be made as to whether or not discipline shall be issued to you for the alleged misconduct. That decision shall be forthcoming in the near future."

The Emergency Placement was effective on June 4th, 2012. All the statements relied upon were received by the 5th, except for the Inspector's Investigative Memorandum that was done on June 8th, 2012. The disciplinary action request recommending removal was determined on June 5th, 2012. This was signed by SMO Grady Stewart and concurred by MMO Dan Howard. Ms. Jackson received a letter of Removal on June 23rd, 2012. Even though Emergency Placement may have been appropriate because of a zero tolerance situation, management had decided in less than two days to issue discipline in the form of a removal.

The claim of being "deemed injurious to others" is solely related to the incident and based on the statements it is unclear who the aggressor was. As a witness myself to the events before the confrontation, I observed Ms. Jackson approaching Coleman and Kelly and everyone appeared pleasant, without hostility involved. This took place across the aisle from APPS2 just in front of the Spill room. During her treatment by the EMTs for which I was present, Ms. Jackson's demeanor was not hostile or injurious to anyone. Later that morning I was called to the maintenance office by SMO Stewart for an investigative interview with Ms. Jackson. They had returned from treatment for her injury and there was no reference to any hostile, belligerent or injurious conduct. Ms. Jackson was very calm and cooperative.

Article 2 of the CBA was cited because the Union expects no disparity of treatment with respect to employees' status and level, EAS or PS. Article 8 was cited because the union contends that the Emergency Placement should not have exceeded one week and Ms. Jackson should be made whole for the remaining period.

Kurt Jolene.

SHOP STEWARD
L+DC, MAINT

2012-12  number 1 row    to print    page

K. M. /du          STEWARD          7/1/2012
SIGNATURE        TITLE OF APWU/ER LOCAL UNION REP.     DATE

Sharlene Jackson
Notice of Removal

12. Contentions

APWU and Maintenance Mechanic Sharlene Jackson are aggrieved over SMO Grady
Stewart blatant violation of Articles cited by issuance of the Notice of Removal dated
June 22, 2012. Management action is obstinate, arbitrary, capricious, malicious, and
not for just cause.

The Notice of Removal is procedural defective and lacks due process. Grievant did
not get an opportunity to tell her side prior to the issuance of the Notice of Removal.
Also, management did not do a thorough investigation. Management only relied
solely on statements and not interviewing the witnesses. Other statements did not
mention any physical abuse from grievant nor grievant provoked the action.
Management states the grievant is a good worker. Grievant does not remember any
aggression toward Mr. Kelly.

13. Resolution

APWU request Maintenance Mechanic Sharlene Jackson's Notice of Removal dated
June 22, 2012 be rescinded and removed from all files and records with no further
reference thereto. APWU, furthermore, request grievant be made whole of all losses
and entitlements with interest.

Step 2 Grievance Decision
K11T-1K-D 12262341
2012-1134
Sharlene Jackson

August 29, 2012

# Additions & Corrections

## Additions:

Grievant, Sharlene Jackson, was put on Emergency Placement in a 'Non Pay' duty status for being involved in an on the job altercation where she was injured on June 04 2012 at the Atlanta L&DC Facility.

The Union position is the same as in previous steps.

The Step 2 Designee, Mya Simpson has added her own version of what happened in this case by stating that '*(t)he grievant aggressively pursued the coworker to the extent that she also sustained injuries after approaching the coworker a second time and being pushed away just as she was during the first attempt.*'

Out of all the statement collected by management there not one statement that shows that the Grievant was, in fact, 'aggressive' towards her 'coworker' and '(b)ased on the witness statements' there is nothing showing that she was the cause of the 'physical altercation'. None of the statements collected by management reflect what was said between them. Just because the grievant sought out her 'coworker' that fact does not make her the aggressor by any stretch of imagination.

The step 2 Designee is confusing fact with fiction. Without intimate knowledge of the conversation between the two of them the step 2 designee can only assume that the '*initiated interaction*' had malice intent by the grievant. The statement collection do not show that anyone knew what the conversation between the two of them was about and therefore terms used by the step 2 designee like, '*(t)he grievant aggressively pursued...*' and '*the grievant initiated interaction...escalating the encounter into a physical altercation*' are descriptions that are fictional in nature and without the blow by blow and intimate details of their conversation at that time management cannot assume this grievant was the aggressor and at fault and a danger to self and others. The burden of proof has yet to be made by Management or the Step 2 Designee at this point.

It is to be noted that the only statement that says anything about grievant 'smelling of alcohol' is the 'coworkers' statement and cannot be counted as credible. There is no other statement that makes such a claim. Management did not charge the grievant with intoxication in the Notice of Removal nor does the 2608 mention of intoxication or the smell of alcohol. Therefore pursuant to Article 16 management has the burden to prove Just Cause and has yet to do so.

Darryl Davis, Assistant Maintenance Director

2/3/24, 11:23 AM                        (146,977 unread) - sharlene.jackson2@yahoo.com - Yahoo Mail



Page 1 of 2

ATLANTA DISTRICT

**UNITED STATES**
**POSTAL SERVICE**

July 30, 2012

Received 8/2/12   Darryl D.
Hand Delivered 8/2/2012

Darryl Davis
APWU
ATLANTA GA—
   STEP 2 GRIEVANCE APPEAL DECISION    K11T-1K-D 12262341
   UNION NUMBER    20121134
   GRIEVANT    Sharlene Jackson

The two parties met on Thursday, July 26, 2012, in reference to the grievance
identified above

**Issue:**
Did management violate Article(s) 16, 2, 5, 15, 19 and 30 of the National
Agreement?

**Requested Remedy:**
APWU requests that the grievant be returned to a pay status with time off
considered a 14-Day suspension

**Union Position:**
On June 4, 2012, the grievant was involved in an incident, which resulted in
management putting the grievant on Emergency Placement, in a "non-pay duty
status". During the Step 2 meeting, the Union contends that the grievant was out 18
days without pay and that the extent of time off was unwarranted. The Union
contends that the grievant was not a threat and had no history of violence. The
Union contends that since there was no threat assessment completed that the
grievant was not a threat to self or others. The parties at Step 1 agreed to an
extension until 6/25/2012.

**Decision:**
After careful consideration of the facts and all relative material in this case, it is my
decision to deny this grievance based on the following:

**Management Position:**
On the morning of June 4, 2012, the grievant was involved in a physical altercation
which resulted in both employees needing medical attention. Based on the witness
statements, the grievant initiated interaction with a coworker escalating the
encounter into a physical altercation of which the grievant was said to have punched
and scratched the other employee. The grievant aggressively pursued the
coworker to the extent that she also sustained injuries after approaching the
coworker a second time and being pushed away just as she was during the first
attempt.

ns. 2012-1134          ncy                    Fig    b cras...

- 2 -

The grievant did not remain in a non-pay status for over 30 days in fact, the grievant was in a non-pay status for only 13 potential days of work. Management was well within its rights according to Article 16 of the CBA to place the grievant on EP and for the grievant to remain in that status until disposition of the case.

Management contends that there was no need for the threat assessment team to be contacted since the grievant pursued one coworker in this isolated incident. The grievant was also said to have smelled of alcohol

Article 16.7 Emergency Procedure, an employee may be immediately placed on an off-duty status (without pay) by the Employer, but remain on the rolls where the allegation involves intoxication (use of drugs or alcohol), pilferage, or failure to observe safety rules and regulations, or in cases where retaining the employee on duty may result in damage to U.S. Postal Service property, loss of mail or funds, or **where the employee may be injurious to self or others**. The employee shall remain on the rolls (non-pay status) until disposition of the case has been had. If it is proposed to suspend such an employee for more than thirty (30) days or discharge the employee, the emergency action taken under this Section may be made the subject of a separate grievance

The grievant is aware of the rules concerning zero tolerance for violence in the work place as well as the prohibited use of alcohol during the performance of duties. The Form 2608 was provided to the Union as requested.

There is no evidence to substantiate a violation of Article(s) 16(Discipline Procedure), 2(Non-Discrimination and Civil Rights), 15(Grievance-Arbitration Procedure), 5(Prohibition of Unilateral Action), 19(Handbooks and Manuals) or 30(Local Implementation) of the collective bargaining agreement.

Management requests copies of all union additions and/or corrections. The Union presented a RFI which was approved and all existing requested information was provided on that day. There were no other contentions raised by the Union at Step 2. If you appeal this decision, provide me with a copy of the appeal.

Sincerely,

Mya Simpson
Mya Simpson
Labor Relations Specialist (A)

Griev# 12262341

Sharlene Jackson
Notice of Removal
K06T-1K-D 12268987
2012-1240
Appeal to Arbitration

APWU appeals the Step 2 decision. Union position is the same as in previous steps. The grievance is not untimely. Grievance was mailed to North Metro Labor Relations on July 17, 2012. The grievance was not received by management advocate from North Metro Labor Relations until July 23, 2012.

Further, several things stated in the Step 2 denial was not discussed.

1. We did not discuss anything about drinking. Also, grievant was not charged or cited for drinking or intoxication. Moreover, management act alone prejudice this case and bring a chilling effect to the grievance arbitration procedure.
2. The grievant did not state she was intoxicated, Supervisor Grady nor Inspector Mormon state smelling of alcohol, nor while at Grady Hospital no toxicology test conducted.
3. Grievant was not charged with violating ELM 665.26.

In review of the statements, there are contradictions.

a. ET Mathis stated grievant was pushed to the floor by a mail handler and she did not get up.
b. Another witness state of observing grievant and Mr. Coleman and Mr. Kelly walking and talking calmly.

As stated in previous steps, management did not do a thorough, fair and objective investigation.

ATLANTA DISTRICT


**UNITED STATES**
**POSTAL SERVICE**

August 9, 2012                                    Cert# 7008 1830 0002 1242 2127

Dawud Ali
APWU
ATLANTA GA –

STEP 2 GRIEVANCE APPEAL DECISION              K11T-1K-D 12268987
UNION NUMBER                                 20121240**Untimely**
GRIEVANT                                      Sharlene Jackson

The two parties met on Friday, August 3, 2012, in reference to the grievance
identified above.

### Issue:
Did management violate Article(s) 16, 2, 5, 15 and 19 of the National Agreement?

### Requested Remedy:
APWU requests that the Notice of Removal dated 6/22/2012 issued to the grievant
be rescinded and removed from all files and records with no further reference
thereto. APWU further request grievant be made whole of all losses and
entitlements with interest.

### Union Position:
APWU and the grievant, Sharlene Jackson, are aggrieved over SMO Grady Stewart
blatant violation of Articles cited by issuance of the Notice of Removal dated June
22, 2012. Management's actions are obstinate, arbitrary, capricious, malicious, and
not for just cause.

The Notice of Removal is procedurally defective and lacks due process. The
grievant did not get an opportunity to tell her side prior to the issuance of the Notice
of Removal. Also, management did not do a thorough investigation. Management
relied solely on statements and did not interview the witnesses. Other statements
did not mention any physical abuse from the grievant or that the grievant provoked
the action. Management states the grievant is a good worker. The grievant does
not remember any aggression toward Mr. Kelly.

### Decision:
After careful consideration of the facts and all relative material in this case, it is my
decision to deny this grievance based on the following:

### Management Position:
The grievance is UNTIMELY in that the Step 1 decision was rendered on 7/7/2012
and the grievance was Appealed to Step 2 on 7/23/2012, **6 days late.**

- 2 -

On the morning of June 4, 2012, the grievant was involved in a physical altercation which resulted in both employees needing medical attention. Based on witness statements and portions of the grievant's own statement, she initiated interaction with a coworker escalating the encounter into a physical altercation of which the grievant was said to have punched and scratched the other employee. The grievant aggressively pursued the coworker to the extent that she also sustained injuries after approaching the coworker a second time and being pushed away just as she was during the first attempt.

In the US Postal Inspector's report an interview was completed by Inspector Cynthia Mormon with the grievant, Sharlene Jackson on 6/4/2012 at the Grady Hospital. During the interview, Ms. Jackson states that she BT at 11 pm and headed to the battery room when she saw Kelly speaking with a coworker. She walked towards the two and asked to speak to Mr. Kelly and he agreed. Jackson and Kelly proceeded to walk towards the APPS as they talked. She then stated that Kelly pushed her down saying "Don't touch me". Ms. Jackson stated that she asked, "What's going on?" and Mr. Kelly pushed her down again. She stated that she did not remember anything more about that.

Ms. Jackson explains that she and Mr. Kelly began speaking around November or December of 2011. According to the grievant, they would talk on occasion, but never had any prior altercations, and that she considered them to be friends. Ms. Jackson stated that she and Mr. Kelly did not see each other socially outside of work, but that they had mutual friends at the facility who were from Ohio also.

Ms. Jackson further stated that she did not recall physically assaulting Mr. Kelly and that things seemed normal when she approached Kelly prior to the incident. Ms. Jackson admitted to having a couple of drinks before coming to work and that even 1 drink can have an adverse effect on her. She stated that she did not raise her voice or yell at Mr. Kelly.

In the explanation provided by the grievant of the accounts leading to what resulted in a physical altercation with Mr. Kelly appears to contain major gaps and inconsistencies in the story. Ms. Jackson states that she clocked in and was headed to the battery room and happened to run into Mr. Kelly however, in a written statement provided by Erica Ammons, at around 12:20 am on 6/4/2012, the grievant is said to have approached her and asked where Mr. Kelly was working and that she told the grievant where he was. Ms. Ammons states that at a distance she could see the two having words and that Mr. Kelly was gesturing for the grievant to go on but Ms. Jackson continued to stay in his face. Within seconds, Ms. Ammons states that the grievant and Mr. Kelly passed licks. She says that Mr. Kelly appeared to be attempting to keep Ms. Jackson off of him while she was going for his face.

- 3 -

Mr. Kelly shoved Ms. Jackson and she hit the ground. The grievant is said by this witness, to have immediately got up and advanced towards Mr. Kelly again, at which time Mr. Kelly was calling for the witness to help get the grievant away from him. Ms. Ammons indicates that she then say Mr. Kelly attempt to walk away from the grievant but when he turned away Ms. Jackson hit him in the face, and Mr. Kelly reacted by shoving the grievant hard to the ground.

According to the grievant's story, she just happened to run into Mr. Kelly and the two of them began a casual conversation with one another, when suddenly Mr. Kelly pushed her to the ground, when in fact the grievant sought out Mr. Kelly who indicated in his statement, that he did not want to speak with Ms. Jackson. Mr. Kelly states that he could not understand the grievant, and that she smelled of alcohol, and just wanted her to leave him alone. The grievant states that she had no idea what was going on, and that Mr. Kelly began telling her not to touch him, and then pushed her to the ground again. The grievant states that she did not yell at Mr. Kelly and that she did not recall assaulting him.

The grievant stated that she was intoxicated and could not remember much of what happened. The grievant could not provide insight on the conversation, or as to her need to speak with Mr. Kelly concerning issues that would provoke/result in acts of violence which occurred by both parties.

Management contends that all elements of just cause were considered in the request/issuance of the disciplinary action taken against the grievant.
1) There is a reasonable rule: yes, Zero Tolerance Policy- Inappropriate behavior/Acts of Violence
2) The grievant was aware of the rule: yes, Orientation/Safety Talks/Employee Bulletin Boards/Handbooks and Manuals
3) There was an investigation conducted: yes, Investigative Interview 6/4/2012, with the grievant and Union Representative Kurt Galera. Postal Police Investigation including interview with the grievant, the other party involved, and witnesses.
4) The investigation was fair: yes, all parties involved and witness were allowed to provide statements
5) There was credible proof and evidence: yes, eye witnesses/physical evidence on both parties
6) Evenhandedly applied: yes, a lesser penalty would unjustly minimize the seriousness of the offense
7) Punishment fit the crime: yes, the grievant aggressively pursued a coworker escalating the incident to physical violence and physical injury
8) Timely action: yes, all evidence was gathered/considered before the discipline was issued

- 4 -

## ELM 665.24 Violent and/or Threatening Behavior
The Postal Service is committed to the principle that all employees have a basic right to a safe and humane working environment. In order to ensure this right, it is the unequivocal policy of the Postal Service that there must be no tolerance of violence or threats of violence by anyone at any level of the Postal Service. Similarly, there must be no tolerance of harassment, intimidation, threats, or bullying by anyone at any level. Violation of this policy may result in disciplinary action, including removal from the Postal Service.

## ELM 665.26 Intoxicating Beverages
Employees must not drink beer, wine, or other intoxicating beverages while on duty; begin work or return to duty intoxicated; or drink intoxicating beverages in a public place while in uniform. Unless the postmaster general specifically authorizes an exception (for example, an official reception), employees must not have or bring any container of beer, wine, or other intoxicating beverage into any Postal Service facility or premises, whether or not the container has been opened. Employees found to be violating this policy may be subject to disciplinary action.

The grievant is aware of the rules concerning zero tolerance for violence in the work place as well as the prohibited use of alcohol during the performance of duties.

There is no evidence to substantiate a violation of Article(s) 16(Discipline Procedure), 2(Non-Discrimination and Civil Rights), 15(Grievance-Arbitration Procedure), 5(Prohibition of Unilateral Action) or 19(Handbooks and Manual) of the collective bargaining agreement. The Form 2608 was provided to the Union as requested.

Management is in question of the Steward's Certification due to the discovery that the Roster which was sent by the Local Union President to management is not in compliance with the assignment of the Union Representatives as required according to Article 17 of the National Agreement.

At the close of our meeting, the Union presented a RFI for a copy of the Stewards Roster that was sent by the Local Union President to management. The request was approved and the document was provided to Union Representative Dawud Ali on that day. Management requests copies of all union additions and/or corrections. There were no other contentions raised by the Union at Step 2. If you appeal this decision, provide me with a copy of the appeal in accordance with the provisions of Article 15.

Sincerely,

Mya Simpson
Labor Relations Specialist (A)

| Federal Employee's Notice of Traumatic Injury and Claim for Continuation of Pay/Compensation | **U.S. Department of Labor** Office of Workers' Compensation Programs |
|---|---|

Employee: Please complete all boxes 1 - 15 below.  Do not complete shaded areas.
Witness: Complete bottom section 16.
Employing Agency (Supervisor or Compensation Specialist): Complete shaded boxes a, b, and c.

**Employee Data**

| 1. Name of employee (Last, First, Middle) | | 2. Social Security Number |
|---|---|---|
| JACKSON                          SHARLENE | | 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 |

| 3. Date of birth   Mo. Day Yr. | 4. Sex | 5. Home telephone | 6. Grade as of date of injury |
|---|---|---|---|
| 8  21  68 | Male ☐  Female ☒ | 216-244 4580 | Level 7  Step 0 |

| 7. Employee's home mailing address (Include street address, city, state, and ZIP code) | 8. Dependents  / |
|---|---|
| 1470 BOGGS RD, APT 212 | ☐ Wife, Husband |
| City                          State    ZIP Code | ☒ Children under 18 years |
| DULUTH                     GA     30096 | ☐ Other |

**Description of Injury**

9. Place where injury occurred (e.g. 2nd floor, Main Post Office Bldg., 12th & Pine)

MAIN WORK RM FLOOR, NEAR APPS 2, Sid2, Dumper

| 10. Date injury occurred   Time | 11. Date of this notice | 12. Employee's occupation |
|---|---|---|
| Mo. Day Yr.          ☒ a.m. | Mo. Day Yr. | MAINTENANCE MECHANIC |
| 6  4  2012    12:10  ☐ p.m. | 6  4  2012 | |

13. Cause of injury (Describe what happened and why)

PUSHED to the ground, twist, Insured the left upper shoulder.

| | a. Occupation code |
|---|---|

| 14. Nature of injury (Identify both the injury and the part of body, e.g., fracture of left leg) | b. Type code | c. Source code |
|---|---|---|
| UPPER left shoulder area Pain | | |
| | OWCP Use - NOI Code | |

**Employee Signature**

15. I certify, under penalty of law, that the injury described above was sustained in performance of duty as an employee of the United States Government and that it was not caused by my willful misconduct, intent to injure myself or another person, nor by my intoxication.  I hereby claim medical treatment, if needed, and the following, as checked below, while disabled for work:

☐ a. Continuation of regular pay (COP) not to exceed 45 days and compensation for wage loss if disability for work continues beyond 45 days. If my claim is denied, I understand that the continuation of my regular pay shall be charged to sick or annual leave, or be deemed an overpayment within the meaning of 5 USC 5584.

☐ b. Sick and/or Annual Leave

I hereby authorize any physician or hospital (or any other person, institution, corporation, or government agency) to furnish any desired information to the U.S. Department of Labor, Office of Workers' Compensation Programs (or to its official representative), This authorization also permits any official representative of the Office to examine and to copy any records concerning me.

Signature of employee or person acting on his/her behalf _____    Date _____

Any person who knowingly makes any false statement, misrepresentation, concealment of fact or any other act of fraud to obtain compensation as provided by the FECA or who knowingly accepts compensation to which that person is not entitled is subject to civil or administrative remedies as well as felony criminal prosecution and may, under appropriate criminal provisions, be punished by a fine or imprisonment or both.

Have your supervisor complete the receipt attached to this form and return it to you for your records.

**Witness Statement**

16. Statement of witness (Describe what you saw, heard, or know about this injury)

| Name of witness | Signature of witness | Date signed |
|---|---|---|

| Address | City | State | ZIP Code |
|---|---|---|---|

Form CA-1
Rev. Apr. 1999

Authorization for Examination
And/Or Treatment

**U.S. Department of Labor**
Employment Standards Administration
Office of Workers' Compensation Programs



OMB No. 1215-0103
Expires: 10-31-2008

The following request for information is required under (5 USC 8101 et seq.). Benefits and/or medical services expenses may not be paid or may be subject to suspension under this program unless this report is completed and filed as requested. Information solicited will be furnished and utilized in compliance with the Freedom of Information Act, the Privacy Act of 1974 and OMB Cir. No. A-108.

Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number.

## PART A - AUTHORIZATION

1. Name and Address of the Medical Facility or Physician Authorized to Provide the Medical Service:
GRADY MEMORIAL HOSPITAL

2. Employee's Name (last, first, middle)
JACKSON, SHARLENE

3. Date of Injury (mo., day, yr.)
6/4/2012

4. Occupation
MAINTENANCE MECHANIC

5. Description of Injury or Diagnosis
INJURED left upper shoulder, caused Buy Pushed to the ground.

6. You are authorized to provide medical care for the employee for a period of up to sixty days from the date shown in Item 11, subject to the condition noted in Item A, and to the condition indicated either 1 or 2, in Item B.

A. Your signature in Item 3B of Part B certifies your agreement that all fees for services shall not exceed the maximum allowable fee established by OWCP and that payment by OWCP will be accepted as payment in full for such services.

B. ☒ 1. Furnish office and/or hospital treatment as medically necessary for the effects of this injury. Any surgery other than emergency must have prior OWCP approval.

☐ 2. There is doubt whether the employee's condition is caused by an injury sustained in the performance of duty, or is otherwise related to the employment. You are authorized to examine the employee using accepted nonsurgical diagnostic studies, and promptly advise me undersigned whether you believe the condition is due to the alleged injury or to any circumstances of the employment. Pending further inquiry, you may provide necessary conservative treatment if you believe the condition may be to this injury or to the employment.

7. If a Disease or Illness is involved, OWCP Approval for Issuing Authorization was Obtained from: (Type Name and Title of OWCP Official)

8. Signature of Authorizing Official

9. Name and Title of Authorizing Official (Type or print clearly)
Grady Stewart JR
SUPERVISOR, MAINTENANCE OPERATIONS
U.S. POSTAL SERVICE

10. Local Employer, Area, and Phone Number
404-765-5571

11. Date (mo., day, year)
6/4/2012

12. Send one copy of your report (FECA, number of address)

13. Name and Address of Employing Place of Employment
U.S. POSTAL SERVICE/MAINTENANCE
2310 C W. GRANT PARKWAY
ATLANTA, GA. 30320
Department or Agency

**U.S. DEPARTMENT OF LABOR**
Employment Standards Administration
Office of Workers' Compensation Programs

Bureau or Office

Local Address (including ZIP Code)

## Public Burden Statement

We estimate that it will take an average of 5 minutes to complete this collection of information, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and reviewing the collection of information. If you have any comments regarding this estimate or any other aspect of this collection of information, including suggestions for reducing this burden, send them to the U.S. Department of Labor, Office of Workers' Compensation Programs, Room S-3229, 200 Constitution Avenue, N.W., Washington, D.C. 20210.

DO NOT SEND THIS COMPLETED FORM TO THIS OFFICE.

Form CA-16
Revised April 2007

1/5/24, 2:19 PM                                    thumbnail (1080×1406)

**Authorization for Examination And/Or Treatment**

**U.S. Department of Labor**
Employment Standards Administration
Office of Workers' Compensation Programs

The following request for information is required under 5 USC 8101 et. seq.). Benefits and/or medical services expenses may not be paid or may be subject to suspension under this program unless this report is completed and filed as requested. Information collected will be furnished in compliance with the Freedom of Information Act, the Privacy Act of 1974 and OMB Cir. No. A-130.

Persons are not required to respond to the collection of information unless it displays a currently valid OMB control number.

OMB No. 1215-0160
Expires 10-31-2007

**PART A - AUTHORIZATION**

1. Name and Address of the Medical Facility or Physician Authorized to Provide the Medical Service
GRADY MEMORIAL HOSPITAL

2. Employee's Name (last, first, middle)
JACKSON, SHARLENE

3. Date of Injury (mo., day, yr.)
6/4/2012

4. Occupation
MAINTENANCE MECHANI...

5. Description of Injury or Disease
INJURED left upper shoulder, caused by pushed to the ground.

6. You are authorized to provide medical care for the employee for a period of up to sixty days from the date shown in item 11, subject to the condition stated in item A, and to the condition indicated either 1 or 2, in item B.

   A. Your signature in item 38 of Part B certifies your agreement that all fees for services shall not exceed the maximum allowable fee established by the OWCP and that payment by OWCP will be accepted as payment in full for said services.

   B. ☒ 1. Furnish office and/or hospital treatment as medically necessary for the effects of this injury. Any surgery other than emergency must have prior OWCP approval.

      ☐ 2. There is doubt whether the employee's condition is caused by an injury sustained in the performance of duty, or is otherwise related to the employment. You are authorized to examine the employee using indicated non-surgical diagnostic studies, and promptly advise the undersigned whether you believe the condition is due to the alleged injury or to any circumstances of the employment. Pending further advice you may provide necessary conservative treatment if you believe the condition may be to the injury or to the employment.

7. If a Disease or Illness is involved, OWCP Approval for Issuing Authorization was Obtained from: (Type Name and Title of OWCP Officer)

8. Signature of Authorizing Office
   [signature]

   9. Name and Title of Authorizing Officer (Type or print clearly)
   Grady Stewart JL
   SUPERVISOR, MAINTENANCE OPERATIONS
   U.S. POSTAL SERVICE

10. Local Employing Agency Telephone Number
404-765-5571

12. Send one copy of your report. (Fill in remainder of address)

11. Date (mo., day, year)
6/4/2012

13. Name and Address of Employee's Place of Employment
U.S. Postal Service/Maintenance
2310 C W. Grant Parkway
Atlanta, GA. 30310

**U.S. DEPARTMENT OF LABOR**
Employment Standards Administration
Office of Workers' Compensation Programs

Department of Agency

Bureau or Office

Local Address including ZIP Code

**Public Burden Statement**

The estimated time required to complete this collection of information, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data, and completing and reviewing the collection of information. If you have any comments regarding this estimate or any other aspect of this collection of information, including suggestions for reducing this burden, send them to the Office of Workers' Compensation Programs, U.S. Department of Labor, Room S-3229, 200 Constitution Avenue, N.W., Washington, D.C. 20210.

DO NOT SEND THE COMPLETED FORM TO THIS OFFICE

Form CA-16
Rev. 8...

GOLDMAN & EHRLICH
Inspector In Charge, Security Group
July 12, 2021
Page 2

The termination in 2012, which Ms. Jackson has always disputed, was based on an incident with a male employee, Jarrold Kelly, who violently pushed her to the ground causing her to be injured at work. Ms. Jackson was taken to the hospital due to the injuries inflicted by Kelly when he violently shoved her to the ground. Mr. Kelly claimed that Complainant was the aggressor, but as noted in the June 8, 2012 Postal Inspector report that was part of your recent package of documents, there were conflicting statements on this issue. Nevertheless, it was confirmed by several witnesses, including the male assailant, Kelly, that Kelly did push Ms. Jackson, twice, and that she hit the ground hard. A written statement by the shop steward who observed part of the incident noting that Ms. Jackson did not display any hostility at any time before, during or after the incident. A copy of this statement is attached hereto as Exhibit C.

The documents attached to your June 15, 2021 decision to terminate Ms. Jackson contain only a single reference by Kelly, that he "smelled" alcohol on her breath. It is important to note that a Postal Inspector questioned Ms. Jackson that same day when she was at the hospital about what had occurred. See ¶ 5 of the June 8, 2012 Inspector report. The inspector makes no claim of intoxication or of smelling alcohol on her breath at the hospital on the day of the incident. That Inspector does claim that Ms. Jackson mentioned that she had two drinks before ever reporting to work. What the Inspector fails to note is that she had those drinks the *day before her shift*. Notably, she was never charged nor accused by management of having had alcohol or being under the influence when she was terminated in June of 2012.

Once again, it is important to highlight the fact that the alleged incident, which Ms. Jackson disputes, occurred back in 2012! She has worked for the USPS and performed her duties without any incident since 2017. It is therefore clear that she does not present any type of security risk to the USPS. She is seeking immediate reinstatement.

Ms. Jackson has signed off on this letter attesting the accuracy of these facts. Please advise if you need any further information or have any other questions.

Sincerely,


Arthur R. Ehrlich


ARE:ass
Enclosures

ARE.sss
Enclosures

GOLDMAN & EHRLICH
Inspector In Charge, Security Group
July 12, 2021
Page 3

I, Sharlene Jackson, confirm that the statements in this letter prepared by my attorney are true and accurate. I was not the aggressor in the incident back in 2012, rather it was Mr. Kelly who, without any reason or justification, pushed me to the ground twice, causing my injuries. I never at any time consumed any alcohol while on duty, or before reporting to work. I told the Inspector back in June 2012, that I had two drinks but that I had those drinks the day before I reported to work. I was not drinking on the day of the incident for which I was terminated.

Dated: _____

          _____
          Sharlene Jackson

LAW OFFICES OF
GOLDMAN & EHRLICH

11 South Lasalle Street, Suite 1600
Chicago, Illinois 60603
(312) 332-6733
Fax (312) 332-6883

ARTHUR R. EHRLICH
Also Licensed Ohio Bar

JONATHAN C. GOLDMAN
Also Licensed to Practice
in Front of the Supreme Court of America

SAM SLDAL
Also Licensed in Indiana

CLAUDIA DELIGIOS
Of Counsel

MANUEL BARBOSA, SR.
Of Counsel

July 12, 2021

**VIA CERTIFIED MAIL & RETURN RECEIPT**
Inspector In Charge, Security Group
U.S. Postal Inspection Service
475 L'Enfant Plaza, SW
Washington, DC 20260-2186

> **Re:** **Sharlene Jackson, EIN# 01506333**
> **Appeal of June 15, 2021 - Decision to terminate due to background investigation**

Dear Sir/Madam:

Ms. Sharlene Jackson has retained my office to appeal your June 15, 2021 decision to terminate her after a background security investigation. A copy of this decision is attached hereto as Exhibit A. I have also included her PS Form 50 for your reference as Exhibit B.

Your June 15, 2021 letter claims she was being removed due to "workplace violence and consumption of alcohol while on duty." These allegations are based on an alleged incident with a male employee that occurred back in 2012 at her prior postal facility in Atlanta, Georgia. As will be discussed below, it was the male employee who in fact violently shoved Ms. Jackson to the ground, twice. There were conflicting witness statements about this incident. While the attacking employee did, falsely, claim that he smelled alcohol on Ms. Jackson's breath, she was never charged for this unsupported allegation, nor was there ever any evidence presented that supported this false charge. It is also important to note that Ms. Jackson was working at the North Texas TX P&DC facility in Coppell, Texas since 2017, fully performing her duties in a satisfactory and exemplary manner at all times.

As noted in the packet of documents attached to your June 2021 decision to terminate, Ms. Jackson noted in her job application in 2017, that she had been previously terminated from the USPS back in 2012. She has been working at the Texas facility without incident since 2017. Yet, for reasons unknown, an investigation was apparently conducted in 2021 leading to this recent decision to terminate her.

Eagan Accounting Service Center


**UNITED STATES**
**POSTAL SERVICE**

**DATE:** May 03, 2023

**OUR REF:** ITM63:PMPRLM:IDUGRN02:75017-9650

**SUBJECT: NOTICE OF INCOME WITHHOLDING**     **EIN:** 01506333

**TO:** SHARLENE JACKSON
PO BOX 177231
IRVING TX 75017-7231

Our office received an income withholding order (copy enclosed) relative to a garnishment claim against your wages. We have processed the order and your wages are thereby exposed to the claim pursuant to the terms of the withholding notice. Please be advised that the Postal Service will impose a $6.00 administrative fee against your wages each time a garnishment deduction is made to defray our costs in executing this action.

You might consider contacting the attorney and/or judgment creditor whose name appears on the order. It could be to your advantage to work out a settlement that is satisfactory to both you and the creditor. If an agreement is reached, we need a copy of the order suspending or otherwise modifying the terms of the original withholding notice.

Finally, any defense you have to this order is yours to make with the court and/or issuing agency and **NOT** with the Postal Service.

Sincerely,

Manager, Eagan Accounting Service Center
Involuntary Deductions Unit
2825 Lone Oak Parkway
Eagan MN 55121-9650

651-406-3600 (voice)
651-406-3636 (FAX)

Enclosure(s)

Filed in Office on 1/5/2022 2:53 PM for 22-GM-00309
Gwinnett Magistrate Court, Tiana P. Garner, Clerk of Court

IN THE MAGISTRATE COURT OF GWINNETT COUNTY
STATE OF GEORGIA

**Plaintiff:**
Atlanta Postal Credit Union
**Plaintiff's contact information:**
Jeremy B. Ross
1170 Peachtree Street NE, Suite 1925
Atlanta, GA 30309
jross@aubreythrasher.com
404-978-1355
GSBN: 367880

**Civil Action File No.** 22-GM-00309

v.

**Defendant:**
Sharlene Jackson,
390 Downing St.
Lawrenceville, GA 30046.

**Garnishment Court Information:**

75 Langley Drive
Lawrenceville, GA 30046

**Garnishee:**
United States Postal Service
Attn: Manager, Payroll Benefits Branch;
Involuntary Deductions Unit
2825 Lone Oak Parkway
MN 55121

## SUMMONS OF CONTINUING GARNISHMENT

**ABOVE-NAMED GARNISHEE(S):**

| | |
|---|---|
| amount claimed due by the Plaintiff | $6,055.06 |
| Plus court costs due on this summons | $56.00 |
| Total garnishment claim | $6,111.06 |

OF JUDGMENT Magistrate Court of GWINNETT County.
J         CASE NO. 14-M-32205

**YOU ARE HEREBY COMMANDED** to immediately hold all money, including wages, and other property, except what is known to be exempt, belonging to the Defendant or obligations owed the Defendant named above beginning on the day of service of this summons and the next 1,095 days. You are **FURTHER COMMANDED** to file your answer, in writing, not later than 45 days from the date you were served with this summons, with the Clerk of this Court and serve a copy of your answer upon the Plaintiff or Plaintiff's Attorney named and the Defendant named above, or the Defendant's Attorney, if known, at the time of ver. Your answer shall state what money, including wages, or other property, e      is known to be exempt, belonging to the Defendant or obligations owed to the Defen    you hold or owe beginning on the day of service of this summons and between the time

22-GM-00309

ervice and the time of making your first answer.  Thereafter, you are required to file
ers no later than 45 days after your last answer.  Every further answer shall state what
ncluding wages, and other property, except what is known to be exempt. belonging to the
ant or obligations owed to the Defendant you hold or owe at and from the time of the last
to the time of the current answer.  You must file additional answers until the sooner of; the
shown on the summons of garnishment, the expiration of 1,095 days, or
of any relationship between garnishee and defendant which includes periodic
payment obligations from garnishee to defendant.  Money, including wages, or other property
n an answer to be subject to continuing garnishment must be sent or delivered to the
concurrently with each answer.

Should you fail to file Garnishee Answers as required by this summons, a judgment by default will
be rendered against you for the amount remaining due on a judgment as shown in the Plaintiff's
Affidavit of Continuing Garnishment.

**WITNESS** the Honorable _Judge, Kristina Hammer Blum_, Judge of said Court,

This _5th_ day of January, 2022~~0~~ _____

Tiana P. Gamer
_____, Clerk of Court
_G w/dr_ _____
                                Court

Filed in Office on 1/5/2022 2:53 PM for 22-GM-00309
Gwinnett Magistrate Court, Tiana P. Garner, Clerk of Court

## IN THE MAGISTRATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

**Plaintiff:**
Atlanta Postal Credit Union
**Plaintiff's contact information:**
Jeremy B. Ross
1170 Peachtree Street NE, Suite 1925
Atlanta, GA 30309                                    **Civil Action File No.**    22-GM-00309
jross@aubreythrasher.com
404-978-1355
GSBN: 367880

v.

Defendant(s):
Sharlene Jackson
390 Downing St.
Lawrenceville, GA 30046

Garnishee:
Jnited States Postal Service
Attn. Manager, Payroll Benefits Branch;
Involuntary Deductions Unit
2825 Lone Oak Parkway
Eagan, MN 55121

### AFFIDAVIT OF CONTINUING GARNISHMENT

### DO NOT USE THIS FORM FOR A CONTINUING GARNISHMENT FOR CHILD SUPPORT OR ALIMONY, SEE O.C.G.A. § 18-4-73.

Personally appeared Jeremy B. Ross, who on oath says:
- I am the Attorney at Law for Plaintiff
- The Plaintiff obtained a judgment against the Defendant in Case Number 14-M-32205 in the Magistrate Court of GWINNETT, Georgia, and no agreement requires forbearance from the garnishment which is applied for currently.
- $6,055.06 is the balance due, which consists of the sum of $2,677.34 Principal, $2,484.82 Postjudgment interest, and $892.90 Other (e.g., prejudgment interest, attorney's fees, costs [exclusive of the cost of this action])
- Upon the Affiant's personal knowledge or belief, the sum stated herein is unpaid.

22-GM-00309

5. The Affiant believes that the Garnishee is an employer of or under periodic obligations for payment of funds to the Defendant.

This __4th__ day of __January__ , 2022

_____
Affiant
Jeremy B. Ross, GSBN: 367880
Print name of Affiant

Sworn to and subscribed before me this __4th__ day
of __January__ , 2022

_____
Notary Public or Deputy Clerk

2021-3295

## GED

22-GM-00309

### BK 0 4 3 0 4 PG 0 2 6 8

**WRIT OF FIERI FACIAS**
**IN THE MAGISTRATE COURT OF GWINNETT COUNTY, GEORGIA**

RECEIVED THRU
MAIL

**CIVIL ACTION NUMBER:**    14-M-32205

JUDGMENT DATE:    October 27, 2014

Jeremy B Ross
Aubrey Thrasher LLC
STE 1925
1170 Peachtree Street NE
Atlanta, GA 30309

ATLANTA POSTAL CREDIT UNION

Plaintiff(s)

VS.

SHARLENE JACKSON

Defendant(s)

To all and singular the sheriffs of the State and their lawful deputies:

In the above styled case, and on the Judgment date set out, the plaintiff(s) named above recovered against the defendant(s) named above, judgment in the following sums:

| | |
|---|---:|
| Principal | $2,677.34 |
| Interest | $443.79 |
| Interest-Other | $0.00 |
| Attorney's Fees | $337.11 |
| Court Cost | $112.00 |
| Total | $3,570.24 |

FILED AND RECORDED
CLERK SUPERIOR COURT
GWINNETT COUNTY, GA
2014 DEC 17  PM 1:55
RICHARD ALEXANDER, CL

**CANCELLATION**

The within and foregoing Fi. Fa. having been paid in full the Clerk of Superior Court is hereby directed to cancel it of record this the

_____ day of _____

Signature: _____

Title: _____

NOTE:

with future interest upon said principal amount from the date of judgment at the legal rate of 12.9% per annum.

Therefore, YOU ARE COMMANDED, that of the goods and chattels, lands and tenements of said defendant(s), and ESPECIALLY/ONLY of the following property, to wit:

YOU cause to be made the several sums set out in the foregoing recital of the judgment in this case and have the said sums of money before the Magistrate Court of this County at the next term of court, with this Writ to render to said plaintiff(s) the principal, interest, attorney fee and costs aforesaid.

Witness the Honorable JANET C MOJA, Judge of Said Court, this the 16th day of December, 2014.

LIEN E  392  P: 00085  09/03/2021 02:31 PM
21-0303...9

RICHARD T. ALEXANDER, JR., CLERK

BY: _____
DANA PIRKLE, Deputy Clerk

Entered on General Execution Docket _____ at Page _____,
this the _____ day of _____

064773

22-GM-00309

BK04301260258

A diligent search was made and no property of the defendant(s) _Sharlene Jackson_

has been found in this County, on which to levy this Fi. Fa.

This the _3rd_ day of _Sep_ , 20 _21_ . _____ S054

Deputy Sheriff

**STATE OF GEORGIA, COUNTY OF GWINNETT:**

I have this day executed the within Fi. Fa. by levying upon and seizing the following described property of defendant(s), to wit:

Aubrey Thrasher LLC
12 Powder Springs St.
Suite 240
Marietta GA 30064

**STATE OF GEORGIA, COUNTY OF GWINNETT:**

I have this day executed the within Fi. Fa. By levying upon and seizing the following described property of defendant(s), to wit:

LIEN B: 05824 P: 00084
09/03/2021 02:31 PM Pgs: 2 Fees: $25.00

Tiana P Garner, Clerk of Superior Court
Gwinnett County, GA

Levied at _____

Georgia, this _____ day of _____ 20_____.

_____
Deputy Sheriff

THE PROPERTY DESCRIBED IN LEVY WAS KNOCKED DOWN TO

| | |
|---|---|
| **Sheriff's Service** | $_____ |
| **Sheriff's Commission** | $_____ |
| Sheriff's Deed | $_____ |
| Sheriff's Levy | $_____ |
| Advertising Fee | $_____ |
| Other | $_____ |
| Total | $_____ |
| Net Proceeds | $_____ |

_____ Sheriff

Levied at _____

Georgia, this _____ day of _____ 20_____.

_____
Deputy Sheriff

THE PROPERTY DESCRIBED IN LEVY WAS KNOCKED DOWN TO

| | |
|---|---|
| **Sheriff's Service** | $_____ |
| **Sheriff's Commission** | $_____ |
| Sheriff's Deed | $_____ |
| Sheriff's Levy | $_____ |
| Advertising Fee | $_____ |
| Other | $_____ |
| Total | $_____ |
| Net Proceeds | $_____ |

_____ Sheriff

Q:\MAGFORMS\MAG 14-31 Back of Fi Fa Form

22-GM-00309

**TO PROTECT YOUR MONEY, INCLUDING WAGES, AND OTHER PROPERTY FROM BEING GARNISHED, YOU MUST:**

1. Complete the Defendant's Claim Form as set forth below; and
2. File this completed claim form with the Clerk of Court's office located at Magistrate Court of Gwinnett County, 75 Langley Drive, Lawrenceville, GA 30046.

FILE YOUR COMPLETED CLAIM FORM AS SOON AS POSSIBLE. You may lose your right to claim an exemption if you do not file your claim form within 20 days after the Garnishee's Answer is filed or if you do not mail or deliver a copy of your completed claim form to the Plaintiff and the Garnishee at the addresses listed on this notice.

The Court will schedule a hearing within ten days from when it receives your claim form. The Court will mail you the time and date of the hearing at the address that you provide on your claim form. You may go to the hearing with or without an attorney. You will need to give the Court documents or other proof that your money is exempt.

The Clerk of Court cannot give you legal advice. IF YOU NEED LEGAL ASSISTANCE, YOU SHOULD SEE AN ATTORNEY. If you cannot afford a private attorney, legal services may be available.

### DEFENDANT'S CLAIM FORM

**I CLAIM EXEMPTION from garnishment. Some of my money or property held by the garnishee is exempt because it is: (check all that apply)**

☐ 1. Social security benefits.

☐ 2. Supplemental security income benefits.

☐ 3. Unemployment benefits.

☐ 4. ̲ ̲ ker.̲ ̲ compensation.

̲ ̲ .̲ ̲erans ̲benefits.

☐ 6. State pension benefits.

☐ 7. Disability income benefits.

☐ 8. Money that belongs to a joint account holder.

☐ 9. Child support or alimony.

☐ 10. Exempt wages, retirement, or pension benefits.

☐ ̲ ̲ exemptions for taxes due on income or earnings not subject to employer withholding.

☐ ̲ ̲ ̲ ̲ as provided by law.

Explain:

furthe̲ ̲ ̲ ̲tes̲ ̲ check all that apply)

X̲ ̲ ̲ ̲ ̲ ̲ ̲ does not have a judgment against me..

☐ ̲ ̲ amount shown due on the Plaintiff's Affidavit of Garnishment is incorrect.

X̲ 3 ̲ ̲e Plaintiff's Affidavit of Garnishment is untrue or legally insufficient.
    **This debt is 10 yrs old**

☐ ̲ ̲ ̲ the hearing on my claim to me at:

Addre̲

Pho̲ne̲ ̲ ̲ ̲

E-m̲ai̲ ̲ ̲ress

*157*

22-GM-00309

The statements made in this claim are true to the best of my knowledge and belief.

_Sharlene Jackson_     _May 23_     , 20_23_
Defendant's signature        Date

_Sharlene Jackson_
Print Name of Defendant

## CERTIFICATE OF SERVICE

This is to certify that I have this day served the Plaintiff or Plaintiff's Attorney and the Garnishee in the foregoing matter with a copy of this pleading by depositing it in the United States Mail in a properly addressed envelope with adequate postage thereon.

This _____ day of _____ , 20____

_____.
Defendant or Defendant's Attorney

2021-3295

IN THE MAGISTRATE COURT OF GWINNETT COUNTY
STATE OF GEORGIA

**Plaintiff:**
Atlanta Postal Credit Union
**Plaintiff's contact information:**
Jeremy B. Ross
1170 Peachtree Street NE, Suite 1925
Atlanta, GA 30309                                    Civil Action File No.
jross@aubreythrasher.com
404-978-1355
GSBN:367880

_____

v.

**Defendant:**
Sharlene Jackson,
390 Downing St.
Lawrenceville, GA 30046.

**Garnishee:**
United States Postal Service
Attn: Manager, Payroll Benefits Branch;
Involuntary Deductions Unit
2825 Lone Oak Parkway
Eagan, MN 55121

## ATTACHMENT FOR SUMMONS OF CONTINUING GARNISHMENT

Other known names of the Defendant(s):
Sharlene Jackson,

Current and past addresses of the Defendant(s):
390 Downing St., Lawrenceville, GA 30046,
Social Security number or Federal tax identification number of the Defendant(s):
2J7-??-4479.

## THIS PLEADING SHALL NOT BE FILED WITH THE COURT

Mr. Raymund Tibayan has consistently refuse to provide the requested information, citing various reasons that do not justify their refusal. This obstruction is hindering the bargaining process and preventing the union from fulfilling its duty to protect the rights and interests of its members.

I demand that Raymund Tibayan immediately furnish the requested information to the union so that negotiations can proceed in good faith and a fair collective bargaining agreement can be reached.

I also request that Raymund Tibayan cease any further attempts to impede the bargaining process and cooperate fully with the union in reaching a mutually beneficial agreement.

**Nature of Grievance**: Refusal to furnish information Relevant to Bargaining Process

**Description of Incident:**

I, Sharlene Jackson, am filing this grievance against Raymund Tibayan for refusing to furnish information that the union has requested and that is relevant to the bargaining process or to the employee's terms or conditions of employment.

# APWU Union fails to bargain in good faith

Mr. Jimmy Williams, is not genuinely engaging in negotiations with the intent to reach an agreement. Mr. Jimmy Williams, examples of actions may be considered not bargaining in good faith:

## Bad faith bargaining1:
Refusing to Negotiate: If either party (management or the union) refuses to participate in negotiations or delays the process unreasonably.

## Bad faith bargaining2:
Insisting on Nonmandatory Subjects: Bargaining must focus on mandatory subjects (such as wages, hours, and working conditions). If a union insists on discussing nonmandatory topics to impasse.

## Bad faith bargaining3:
Surface or Piecemeal Bargaining: Engaging in superficial or fragmented negotiations without a genuine effort to address all relevant issues.

## Lack of good faith4:
Failure to Provide Relevant Information: If management refuses to share relevant information requested by the union during negotiations.

The National Labor Relations Act (NLRA) and other statutes protect employees' rights to collective bargaining. When either party fails to negotiate in good faith, it can lead to unfair labor practices. I believe the APWU Union and Mr. Jimmy Williams, is not bargaining in good faith.

Article 17, Section 3 and Article 31, Section 2, of the National Agreement **require the Postal Service to make available to the Union information which is relevant and necessary to process a grievance or to determine whether a grievance exists.**

Article 15., Section 2, of the National Agreement entitles an employee to discuss a grievance with his immediate supervisor. It also entitles the employee to be accompanied and represented by the employee's steward or a union representative.

## Retaliation, intimidation and discrimination

From:  Sharlene Jackson (sharlene.jackson2@yahoo.com)

To:    raymund.p.tibayan@usps.gov

Date:  Tuesday, June 4, 2024 at 03:07 AM CDT

Mr. Tibayan:

I have spoken to you about the Retaliation, intimidation and discrimination by your management team and you choose not to acknowledge these events.

This will be my last and final communication with you about this matter.

I hope that you will have a discussion with your management team about this matter.

Thanks,

Sharlene Jackson

Yahoo Mail: Search, Organize, Conquer

USPS NORTH TEXAS PDC
MAINTENANCE


UNITED STATES
POSTAL SERVICE

DATE: 7/29/2023

UNION: 277672
Grievant : Sharlene Jackson

After considerable review, it was agreed to resolve the grievance in the following manner. It is understood by this
Agreement that neither party has waived it's positions outlined in the grievance.

Settlement: Without prejudice to the position of either party in this or any other case, and as final and complete
Settlement, the following resolution has been arrived at between the parties.

The parties agree that all employees will be treated with dignity and respect according to the ELM and Postal Policies.

The above constitutes a non-precedent, non-citable agreement between the parties. This constitutes a full and final
Settlement on any and all matters concerning this compliant and the grievance-arbitration procedure.

Raymund Tibayan
Maintenance Manager of Operations

Jimmy Williams.

USPS NORTH TEXAS PDC
MAINTENANCE


UNITED STATES
POSTAL SERVICE

DATE: 7/29/2023

UNION: 277672
Grievant : Sharlene Jackson

After considerable review, it was agreed to resolve the grievance in the following manner. It is understood by this
Agreement that neither party has waived it's positions outlined in the grievance.

Settlement: Without prejudice to the position of either party in this or any other case, and as final and complete
Settlement, the following resolution has been arrived at between the parties.

The parties agree that all employees will be treated with dignity and respect according to the ELM and Postal Policies.

The above constitutes a non-precedent, non-citable agreement between the parties. This constitutes a full and final
Settlement on any and all matters concerning this compliant and the grievance-arbitration procedure.

Raymund Tibayan
Maintenance Manager of Operations

Jimmy Williams.

# North Texas Proc/Dist Ctr Bid Cluster

## MAINTENANCE CRAFT SENIORITY LISTING
### MAINTENANCE MECHANIC MPE    Level 9

List A - User Occupation Group Date for pre June 25, 1992.
List B - User Installation Seniority for June 25, 1992 or later.

| TRACK/TIME | NAME | INSTALLATION | SERVICE | PREFERRED ASSIGNMENT | IDR | RRIS NO | LIST | WORK ZIP |
|---|---|---|---|---|---|---|---|---|
| 0500 1330 | ABBEY, MARK I | 01/11/1992 | 12/20/1986 | 01/11/1992 | 1 | 95832524 | A | 75099 |
| 1330 | CONDE, ALFREDO F | 08/06/1974 | 08/06/1974 | 08/06/1974 | 10 | 55766941 | B | 75099 |
| 1330 | BENNETT, GARY D | 05/24/1997 | 05/24/1997 | 05/24/1997 | 2 | 95571762 | B | 75099 |
| 0500 1330 | BLOHES, LEROY A | 08/29/1998 | 08/29/1998 | 08/29/1998 | 4 | 95770694 | B | 75099 |
| 2700 0550 | CATUNCAN, MANOLITO B | 08/29/1998 | 08/29/1998 | 08/29/1998 | 6 | 95512846 | B | 75099 |
| 0500 1330 | GARRETT JR, GARY F | 04/24/1999 | 03/01/1997 | 04/24/1999 | 1 | 70728302 | B | 75099 |
| 1300 2130 | BROWN JR, ALBERT | 03/25/2000 | 03/25/2000 | 03/25/2000 | 1 | 72172574 | B | 75099 |
| 1300 2130 | RICHARDSON, JERRY | 06/17/2000 | 06/17/2000 | 06/17/2000 | 2 | 95791078 | B | 75099 |
| 1300 2130 | FELIP, HECTOR C | 01/27/2001 | 01/02/1999 | 01/27/2001 | 1 | 95549394 | B | 75099 |
| 1300 2130 | CULVER, JEROME M | 05/19/2001 | 06/19/1999 | 05/19/2001 | 44 | 95606652 | B | 75099 |
| 2100 0530 | BRAND, KEVIN W | 03/24/2004 | 03/24/2004 | 03/24/2004 | 3 | 95575284 | B | 75099 |
| 0500 1350 | DUNCAN JR, WILLIAM H | 08/06/2006 | 12/29/2001 | 08/06/2006 | 1 | 95838098 | B | 75099 |
| 1300 2130 | COCHRELL, ELMER C | 09/16/2006 | 09/16/2006 | 09/16/2006 | 5 | 95617656 | B | 75099 |
| 0430 1300 | BERRY, DAMON W | 12/08/2007 | 12/08/2007 | 12/08/2007 | 4 | 70728191 | B | 75099 |
| 0500 1350 | JENKINS, DEBORAH L | 11/22/2008 | 11/22/2008 | 11/22/2008 | 1 | 95791318 | B | 75099 |
| 2100 0530 | GUERRA, DAVID | 02/28/2009 | 02/28/2009 | 02/28/2009 | 3 | 95617035 | B | 75099 |
| 2100 0530 | LAND, DAVID K | 11/06/2010 | 11/06/2010 | 11/06/2010 | 12 | 95513050 | B | 75099 |
| 1300 2130 | PARRAL, RAYMOND | 08/11/2012 | 08/11/2012 | 08/11/2012 | 2 | 95554553 | B | 75099 |
| 1300 2130 | HART, JAMES A | 08/11/2012 | 08/11/2012 | 08/11/2012 | 4 | 95696153 | B | 75099 |
| 0500 1330 | SMITH, JENNIFER L | 07/26/2014 | 05/03/2003 | 07/26/2014 | 1 | 95687661 | B | 75099 |
| 0500 1330 | HARDMAN III, JERRY L | 09/03/2016 | 09/03/2016 | 09/03/2016 | 1 | 95673773 | B | 75099 |
| 2100 0530 | HOLMAN, DANNY M | 03/04/2017 | 03/04/2017 | 03/04/2017 | 99 | 95543418 | B | 75099 |
| 0500 1330 | GUINN, DARRELL K | 09/26/2020 | 09/26/2020 | 09/26/2020 | 1 | 95825957 | B | 75099 |
| 0500 1330 | SIBLEY, WILLIAM B | 09/26/2020 | 09/26/2020 | 09/26/2020 | 3 | 95676696 | B | 75099 |
| 2100 0530 | FRANKLIN, LAFAYETTE J | 04/10/2021 | 04/10/2021 | 04/10/2021 | 2 | 95813329 | B | 75099 |
| 2100 0530 | STANFORD, LA RAE S | 06/04/2022 | | 06/04/2022 | 8 | 72999461 | B | 75099 |
| 0500 1330 | GOLDMAN, MYKEL | 07/02/2022 | 05/13/2017 | 07/02/2022 | 1 | 95593271 | B | 75099 |
| 2100 0530 | WILDER, WENDELL | 07/30/2022 | | 07/30/2022 | 2 | 95878945 | B | 75099 |
| 0500 1330 | ROBINSON, EBONY C | 02/25/2023 | 04/14/2018 | 02/25/2023 | 1 | 70677124 | B | 75099 |

North Texas Proc/Dist Ctr Bid Cluster

# (No Subject)

From: Sharlene Jackson (sharlene.jackson2@yahoo.com)

To:    sharlene.jackson2@yahoo.com

Date: Sunday, June 16, 2024 at 03:06 PM CDT

## North Texas Proc/Dist Ctr Bid Cluster

### PROMOTION ELIGIBILITY REGISTER
#### MAINTENANCE MECHANIC MPE Level 9

The following is the register of qualified applicants as outlined under the provisions of the National Agreement.

| RANK | EMPLOYEE NAME |
|------|---------------|
| 1 | RUBIEN, RUBIEN M |
| 2 | BALLENGER, ERIC L |
| 3 | CONTRERAS, JOEL |
| 4 | CONTRERAS, KARLA E |
| 5 | TRAN, MIMI N |
| 6 | MCCARTY, DAVID P |
| 7 | LY, PETER |
| 8 | GARCIA, RUSSELL J |
| 9 | SIMPSON, QUINCY D |
| 10 | JONES JR, OSCAR L |
| 11 | HAINSWORTH, GARRY W |
| 12 | LINENSCHMIDT, BRIAN A |
| 13 | MOORE, TERRON V |
| 14 | TATE, GARRETT L |
| 15 | CARRUTH, BRYANT |
| 16 | WRIGHT, MICHAEL A |
| 17 | VINCENT, DECARLOS |
| 18 | ORTIZ, GLENN |
| 19 | JACKSON, SHARLENE |
| 20 | LAWSON, RL |

Yahoo Mail: Search, Organize, Conquer

Case 3:24-cv-01590-N-BW   Document 3   Filed 06/25/24   Page 57 of 80   PageID 61

# MAINTENANCE CRAFT SENIORITY LISTING
## NCE MECHANIC   Level 7

List A - User Occupation Group Date for pre June 25, 1992.
List B - User Installation Seniority for June 25, 1992 or later.

| TR OFF DAYS | START STOP | NAME | INSTALLATION | SERVICE | PREFERRED ASSIGNMENT | IDn | BIDS NO | LIST | WORK ZIP |
|---|---|---|---|---|---|---|---|---|---|
| TUE WED | 2200 0630 | LUGO, RAUL A | 07/06/1996 | 07/06/1996 | | | 954961 57 | B | 75099 |
| MON TUE | 0600 1430 | DURAN, DAVID E | 09/23/2000 | 09/23/2000 | 1 | | 957235062 | B | 75099 |
| SAT SUN | 0600 1430 | CONTRERAS, KARLA E | 03/18/2006 | 03/18/2006 | 7 | | 95772980 | B | 75099 |
| SAT SUN | 0600 1430 | TRAN, MIMIN | 01/06/2007 | 01/06/2007 | 11 | | 95796719 | B | 75099 |
| MON TUE | 2200 0630 | MCCARTY, DAVID P | 02/28/2009 | 02/28/2009 | 9 | | 72190278 | B | 75099 |
| SUN MON | 0600 1430 | DAVIS, SUZETTE R | 12/19/2009 | 12/19/2009 | 1 | | 95736414 | B | 75099 |
| SUN MON | 0600 1430 | LY, PETER | 03/28/2010 | 03/28/2010 | 14 | | 71653192 | B | 75099 |
| SUN MON | 0600 1430 | GOBERT, DANA L N | 03/28/2010 | 03/28/2010 | 1 | | 95877919 | B | 75099 |
| SUN MON | 0600 1430 | JONES JR, OSCAR L | 08/14/2010 | 08/14/2010 | 1 | | 95847820 | B | 75099 |
| SAT FRI | 0600 1430 | HUGHES, TECIA L | 11/06/2010 | 11/06/2010 | 11 | | 95854986 | B | 75099 |
| SUN MON | 0600 1430 | HAINSWORTH, GARRY W | 08/11/2012 | 08/11/2012 | 1 | | 95856375 | B | 75099 |
| SAT FRI | 1400 2230 | WESLEY-GRIFFEN, PATRICIA | 09/07/2013 | 09/07/2013 | 1 | | 72072998 | B | 75099 |
| WED THU | 0600 1430 | BAILES, JOHN D | 09/07/2013 | 09/07/2013 | 4 | | 71324700 | B | 75099 |
| THU FRI | 0600 1430 | CAMMARATA, MICHAEL T | 09/07/2013 | 09/07/2013 | 1 | | 95569683 | B | 75099 |
| SAT FRI | 2200 0630 | WAKEFIELD III, WESLEY | 08/09/2014 | 08/09/2014 | 1 | | 71324892 | B | 75099 |
| SUN MON | 1400 2230 | MOSBY, VICTOR L | 08/20/2016 | 08/20/2016 | 15 | | 71324997 | B | 75099 |
| SAT SUN | 1400 2230 | MOORE, TERRON V | 09/03/2016 | 09/03/2016 | 99 | | 71324791 | B | 75099 |
| SUN MON | 0600 1430 | TWOREK, TIMOTHY A | 11/12/2016 | 11/12/2016 | 1 | | 95508393 | B | 75099 |
| MON TUE | 0600 1430 | SNEED, DEREK L | 11/12/2016 | 11/12/2016 | 1 | | 95490142 | B | 75099 |
| WED THU | 0600 1430 | QUEEN, WAYNE M | 11/12/2016 | 11/12/2016 | 4 | | 95480545 | B | 75099 |
| THU FRI | 1400 2230 | GARCIA, RUSSELL J | 11/12/2016 | 11/12/2016 | 1 | | 95698153 | B | 75099 |
| MON TUE | 0600 1430 | TATE, GARRETT L | 11/24/2018 | 11/24/2018 | 96 | | 72190275 | B | 75099 |
| MON TUE | 0600 1430 | VINCENT, DECARLOS | 03/16/2019 | 03/16/2019 | 1 | | 72190324 | B | 75099 |
| THU FRI | 0600 1430 | WAITES, DERIAN R | 08/08/2014 | 02/01/2020 | 43 | | 70727992 | B | 75099 |
| WED THU | 2200 0630 | FRANKLIN, LAFAYETTE J | 04/10/2021 | 04/10/2021 | 2 | | 95381876 | B | 75099 |
| SAT SUN | 2200 0630 | SOTO, MICHELLE P | 11/06/2021 | 11/06/2021 | 1 | | 95858383 | B | 75099 |
| WED THU | 1400 2230 | MBANGI, CLAUDE M | 11/06/2021 | 11/06/2021 | 1 | | 72190220 | B | 75099 |
| TUE WED | 1400 2230 | JACKSON, SHARLENE | 07/30/2022 | 07/30/2022 | 1 | | 72190218 | B | 75099 |
| SAT FRI | 2200 0630 | WILDER, WENDELL | 07/30/2022 | 07/30/2022 | 2 | | 72190276 | B | 75099 |
| TUE WED | 0600 1430 | FONSECA JR, EDDY J | 07/30/2022 | 07/30/2022 | 1 | | 95647068 | B | 75099 |
| WED THU | 0600 1430 | CARRENO, ANTHONY | 07/30/2022 | 07/30/2022 | 4 | | 72190279 | B | 75099 |

| RANK | TR. OFF DAYS |
|---|---|
| 1 | 2  SAT SUN |
| 2 | 2  SAT FRI |
| 3 | 2  SUN MON |
| 4 | 2  SUN MON |
| 5 | 2  SAT FRI |
| 6 | 1  SAT SUN |
| 7 | 2  SUN MON |
| 8 | 3  TUE WED |
| 9 | 3  SAT FRI |
| 10 | 3  SAT FRI |
| 11 | 3  SAT FRI |
| 12 | 2  SUN MON |
| 13 | 1  SAT SUN |
| 14 | 1  SAT SUN |
| 15 | 3  SAT FRI |
| 16 | 2  MON TUE |
| 17 | 2  THU FRI |
| 18 | 2  SAT SUN |
| 19 | 3  WED THU |
| 20 | 3  MON TUE |
| 21 | 2  SAT SUN |
| 22 | 2  TUE WED |
| 23 | 2  THU FRI |
| 24 | 2  WED THU |
| 25 | 2  THU FRI |
| 26 | 1  WED THU |
| 27 | 1  THU FRI |
| 28 | 1  TUE WED |
| 29 | 2  TUE WED |
| | 1  TUE WED |
| | 1  TUE WED |



283

JIN...
APWU
$0.53 PM
6.24.2023

**APWU**

DALLAS, TX AREA LOCAL

2010 Postal Way
Dallas, TX 75212
(214) 631-3162

GRIEVANCE #_____

**American Postal Workers Union, AFL-CIO**

DATE: 06.24.2023 PHONE #:_____ CRAFT: Maintenance

NAME: Sharlene Jackson _____ EIN #: 01506333

MAILING ADDRESS: PO Box 177231 Irving, TX 75017

EMAIL: Sharlene.Jackson2@yahoo.com  CIRCLE ONE: (FTR) PSE

P/L:____ SENIORITY DATE:_____ LEVEL 7 STEP____ OFF DAYS: W/T DUTY HOURS 40

LIFETIME SECURITY: YES / NO  VETERAN: YES / NO   DO YOU WANT TO BE PRESENT AT STEP 1? YES / (NO)

DETAIL STATEMENT:

I have came across a lot of discriminatory
and bias action in the Maintenance craft.
Unjust treatment based on the group/class
I belong to. My personal characteristics
or beliefs and my expression.
Gender discrimination also has played a big
part among the Maintenance craft.
Here is a list of discrimatory action I have
encounter being in the Maintenance craft:
1. Harassment
2. Unfair.
3. Gender

EMPLOYEE'S SIGNATURE: Sharlene Jackson _____ DATE 6.24.2023

**DALLAS, TX AREA LOCAL**

2010 Postal Way
Dallas, TX 75212
(214) 631-3162

GRIEVANCE #_____

**American Postal Workers Union, AFL-CIO**

DATE: 06·24·2023 PHONE #:_____    CRAFT: Maintenance

NAME: Sharlene Jackson _____ EIN #: 01506333

MAILING ADDRESS: PO Box 177231 IRVING TX 75017

EMAIL: Sharlene.jackson2@yahoo.com    CIRCLE ONE: (FTR) PSE

P/L:____ SENIORITY DATE:_____ LEVEL 7 STEP___ OFF DAYS: W/T DUTY HOURS 40

LIFETIME SECURITY: YES / NO  VETERAN: YES / NO    DO YOU WANT TO BE PRESENT AT STEP 1? YES / (NO)

DETAIL STATEMENT:

4. time

5. Disparate treatment

I have spoken to each person in this

matter but it has fallen on deaf ears.

John C. Sobrey — Mgr Maintenance

Cicil J Cheeran — Maintenance Engineering Spec

Erick X Williams — Mgr Maintenance Operations

Ricky Potts / Bay Tibayan Tour 1, 3 Mgr Maintenance Operations

John Simmons    )
Steve Wright    )  Maintenance Supervisors
Victor Kubsy    )

EMPLOYEE'S SIGNATURE: Sharlene Jackson    DATE 10·24·2023

### Article 38.3.F

When a maintenance employee is excessed to another installation pursuant to Article 12 "grandfather status" does not carry forward from one installation to another. Rather, "grandfather status" is installation specific. Seniority for preferred assignments referred to in Article 38.3.F.4 is an employee's seniority, which is used for preferred assignments. An employee who is reassigned pursuant to Article 12 and who later returns to the same installation and occupational group would have "grandfather status" applied.

### Article 38.3.J

Seniority tie breakers are listed in order in Article 38.3.J. Tie breakers are applied in order until the tie is broken.

Employees excessed into the Maintenance Craft under the provisions of Article 12 of the National Agreement, shall begin a new period of seniority.

### Article 38.3.K

### EXCESS EMPLOYEES
Installation seniority governs in identifying excess employees within an occupational group and level.

Employees excessed to lower level under Article 12 into or remaining in the Maintenance Craft shall receive saved grade. Employees receiving saved grade are required to request placement on promotion eligibility registers in their former higher level.

An employee excessed from their occupational group retains retreat rights to that occupational group irrespective of whether that employee has an in-craft MSS rating.

Current Maintenance Craft employees who are reassigned pursuant to Article 12.5.C.4 (cross section within the craft and installation) retain retreat rights to their former section (occupational group and as identified in their LMOU). The application of their retreat rights, in this specific instance, occurs following the use of the PAR in the section (identified in their LMOU) from which they were excessed and immediately prior to using the PER.

### Article 38.6

A Maintenance Craft Notice of Intent is posted and the duty assignment filled from within the installation where the vacancy exists. This location is where the employee is normally expected to begin and end tour.

e.g. an Area Maintenance Technician (AMT) has their work hours assigned to a Field Maintenance District Office. The AMT begins tour at a 'domicile' office. That 'domicile' office is the AMT's official duty station for purposes of application of the Collective Bargaining Agreement and is where PAR and PER for that AMT duty assignment are established and utilized. This should be indicated on the employee's PS Form 50 lines 35-36 showing the employee's Duty Station and lines 32-34 can indicate a different Employ Office.

6. What occupational group can career employees request to receive eligibility ratings for?

   *All Maintenance Craft occupational groups (MSS and non-MSS) that require an examination, except National Service Technician ET-11.*

7. Can non-Maintenance Craft, career employees that have already received eligibility ratings request to be tested again in subsequent years in an attempt to improve their scores?

   *Yes.*

8. What options are available for non-Maintenance employees who have failed the structured interview, but received an eligible rating on examination 955?

   *In subsequent years, the employee may (1) request to retake the examination for the structured interview only or (2) can request the opportunity to retake both examination 955 and the structured interview. If the employee retakes examination 955, the highest achieved score is used as the eligibility rating.*

9. Can current Maintenance Craft employees that have received In-service eligibility ratings for occupational groups that are not in their facility, request to be tested again in subsequent years in an attempt to improve their scores?

   *Yes.*

10. What happens if an employee is a "no show" for the proctored exam or structured interview during the in-service process?

    *The employee is deemed ineligible and may request to take the exam / interview during the following year's annual opportunity.*

11. Are there any changes to the way employees are ranked on In-service registers?

    *No, there are no changes.*

12. If non-custodial In-service registers exist, how will employees be added in subsequent years?

    *Merged in score order.*

- Incumbents in the Elevator Operator (Occ Code 5438-01XX) Level 4 will be reclassified as Labor Custodian (Occ Code 3502-03XX) Level 4.

- Incumbents in the Laborer Materials Handling (Occ Code 3502-14XX) Level 4 will be reclassified as Labor Custodian (Occ Code 3502-03XX) Level 4.

- Incumbents in the Fireman Laborer (Occ Code 5402-02XX) Level 5 will be reclassified as Building Maintenance Custodian (Occ Code 4749-10XX) Level 5.

- Incumbents in the Materials Handling Equipment Operator (Occ Code 5704-01XX) Level 5 will be reclassified as Maintenance Mechanic (Occ Code 4749-03XX) Level 7.

- Incumbents in the Area Maintenance Specialist (Occ Code 4801-21XX) Level 8 will be reclassified as Area Maintenance Technician (Occ Code 4801-20XX) Level 9.

- Incumbents in the Letter Box Mechanic (Occ Code 3842-02XX) Level 8 will be reclassified as Area Maintenance Technician (Occ Code 4801-20XX) Level 9.

- Incumbents in the Machinist (Occ Code 3414-02XX) Level 8 will be reclassified as Building Equipment Mechanic (Occ Code 5306-0002) Level 9.

- Incumbents in the Maintenance Electrician (Occ Code 2805-03XX) Level 8 will be reclassified as Building Equipment Mechanic (Occ Code 5306-0002) Level 9.

- Incumbents in the Carpenter (Occ Code 4607-02XX) Level 8 will be reclassified as Building Equipment Mechanic (Occ Code 5306-0002) Level 9.

- Incumbents in the Painter (Occ Code 4102-02XX) Level 8 will be reclassified as Building Equipment Mechanic (Occ Code 5306-0002) Level 9.

- Incumbents in the Plumber (Occ Code 4206-02XX) Level 8 will be reclassified as Building Equipment Mechanic (Occ Code 5306-0002) Level 9.

- Incumbents in the Welder (Occ Code 3704-02XX) Level 8 will be reclassified as Building Equipment Mechanic (Occ Code 5306-0002) Level 9.

- Incumbents in the aforementioned positions will either be upgraded and/or slotted to their new position within their existing pay step. They will retain their time credit for advancement to their next step increase.

The parties agree that as a result of the above changes, the existing Maintenance Selection System may require changes.

All employees upgraded and/or slotted in accordance with this agreement will be notified of the opportunity to submit a change preferred assignment selection within 30 days after the effective date of the 2021 National Agreement. The parties agree that the duties and responsibilities of the job descriptions that have been eliminated

This may be accomplished by indicating the lock-in period on the notice of training billet(s) or by notifying the employee in writing.

When selection is made from the preferred assignment register (PAR), employees in the same occupational group and level as the vacancy are considered qualified and no additional training can be required prior to selection.

### Article 38.7.C

### RELIEF ASSIGNMENTS

Relief Assignments may be established pursuant to Article 38.7.C to cover absences of five (5) working days or more for certain types of leave or training.

However, a continual failure to utilize a relief employee for bid coverage assignment may indicate the relief assignment is not required.

Hours worked pursuant to an employee's relief duty assignment do not qualify for out-of-schedule premium pay. Notification of the hours of the relief assignment is not required by Wednesday of the preceding week.

The establishment of relief assignments in the Maintenance Craft shall be kept to a minimum and within the same occupational groups and levels.

**Newly created and reposted relief assignments shall be by occupational group and tour. Positions posted prior to February 28, 2022, are not subject to this section. Relief positions shall be no greater than 10% (or one (1) minimum, at least) of the occupational group and tour.**

### Article 38.7.E

### NONBARGAINING UNIT DETAILS

The duty assignment of a maintenance employee detailed to a nonbargaining unit position more than four (4) months shall be declared vacant and posted and filled in accordance with Article 38. The four (4) months is consecutive and is calculated by month. For example, employees detailed to a nonbargaining unit position on April 16 must end their detail the close of business on August 15 to retain their bid assignment.

Maintenance employees detailed to a nonbargaining unit position are ineligible to accept any promotion or preferred duty assignment(s) while on such detail.

Employees returning to the bargaining unit solely to prevent their duty assignment from being posted for bid violates the Agreement. However, it does not violate the Agreement for an employee to return to the bargaining unit for other reasons. An employee detailed to a nonbargaining unit position must return to the craft for a minimum of one (1) continuous pay period to prevent circumvention of the intent of this provision. The reference to "*one continuous pay period*" means inclusive of days 1 – 14 of a specific pay period. However, while employees may take paid or unpaid period, in no event shall the entire 14 days be in a leave status.

Employees detailed to nonbargaining unit positions are not entitled to outside of schedule overtime (Out-of-Schedule Premium).

(See additional Maintenance Craft Memos, Pages 443-449)

## ELIGIBILITY CRITERIA FOR RETURN TO THE MAINTENANCE CRAFT

Following is the eligibility criteria for consideration of current career employees and former career postal employees for return to Maintenance Craft positions:

- The employee must have held a position in the Maintenance Craft for at least one (1) year.

- The employee must have an eligible rating (in-craft, in-service, or entrance) dated January 1, 1989 or later. (Note: Expired entrance eligibility ratings are acceptable as long as the test specifications have not changed. Also, with the exception of the entry-level custodian exam, maintenance examinations must not be administered noncompetitively).

- Current career employees can be reassigned only to a position previously held or to any position of equal or lower level for which the employee is qualified (no promotion). Selection must be within three (3) years of leaving the Maintenance Craft.

- Former career postal employees can be reinstated only to a position previously held or to any position of equal or lower level for which the employee is qualified (no promotion). Selection must be within three (3) years of leaving the Maintenance Craft. Former postal career employees must meet the eligibility requirements for reinstatement consideration.

**Article 38.5.C**

## SUCCESSFUL APPLICANTS

Article 38.5.C provides that an employee who receives a promotion predicated on the successful completion of training and fails that training is declared inactive on the promotion eligibility register (PER). The PER shall be annotated with an asterisk indicating the employee's inactive status. The employee may request an update for score improvement, but is not required to do so.

After six (6) months, the employee will be activated on the PER, the asterisk will be removed, and the employee will be ranked accordingly.

**Article 38.5.C**

Training required of successful applicants pursuant to Article 38.5.C.3 shall be scheduled and satisfactorily completed within a reasonable period of time which, absent unusual circumstances, shall not exceed one (1) year from the date of the announcement of the successful applicant.

- There may be instances, for various reasons, where an employee who receives a promotion based on successful completion of training refuses to attend the training within the one-year period. On a case-by-case basis, management must determine if the explanation given for the refusal is valid. If it is determined not to be valid, the employee is declared an unassigned regular in the employee's original occupational code and level, and the position reposted. The employee will be bypassed on the promotion eligibility register for this posting.

Within fifteen (15) calendar days of entry into the craft or installation, an employee must be provided a written notice advising the employee they may request to be placed on the appropriate promotion eligibility register (PER).

New to craft/installation employees applying for the PER will receive their results within 60 days after testing.

If two (2) or more maintenance occupational groups exist in an installation or in an installation where an employee is domiciled, a promotion eligibility register (PER) offering promotional opportunity for those occupational groups must be established in that installation.

Part-time regular employees can be placed on a PER, but will be considered only after all full-time regular employees on that PER have been selected or declined the opportunity for promotion. This rule applies to the PER only and does not relate to or impact the PAR selection process for part-time regular employees under Article 38.5.A.7.

Part-time regular employees are placed on the PER below full-time regulars consistent with their achieved scores.

The above provisions also apply to employees on probation.

**Article 38.5.B.7**

### APPLYING FOR INCLUSION ON PROMOTION ELIGIBILITY REGISTER (PER)

The three-year cycle of "open season" was deleted in the 2018-2021 National Agreement. Employees who are not on a PER(s), may apply for inclusion on the appropriate promotion eligibility register(s). Employees who apply will receive the results of their application(s) no later than sixty (60) days after testing provided the applications have been properly completed by the applicants. This opportunity is not for an employee who previously received an ineligible rating. An employee with an ineligible rating would use the update process.

All positions in an installation, both MSS and Non-MSS, are available for application for inclusion on the appropriate promotion eligibility register.

**Filling of Maintenance Vacancies**

### ORDER FOR FILLING VACANT MAINTENANCE POSITIONS

The appropriate PAR and PER must be exhausted before considering other hiring options. To be considered qualified an employee must either be eligible under the current in-craft process for the position in question or be a Maintenance Craft employee in the same level and occupational group as the vacancy. Also, see Article 38.3.K for additional items regarding qualifications for reassignment or retreat under Article 12.

The following is the order for filling vacant maintenance positions:

1. Select the ranking employee on the appropriate preferred assignment register (PAR).

2. An unassigned regular employee may be assigned to the vacant duty assignment.

I have been subjected to Retaliation, Discrimination, Intimidation and Unfair Work Conditions since I have been at North Texas P&DC:

### Retaliation

The adverse actions can include termination, demotion, reduction in pay, or other negative consequences, this adverse action was a direct result of my protected activity.

**PENAL CODE** section 422.6, subdivision(a), makes it unlawful to, by force or threat of force oppress, injure, intimidate, or interfere with any other person.

### Discrimination

1. Unfair Treatment
2. Exclusion
3. Unequal Pay
4. Denied Opportunities
5. Change in job duties without justification
6. Favoritism

### Intimidation

The actions of Raymund Tiybana, Kim Gbadebo and Jessica Potts, actions or speech threatens or endangers the health, well-being, property, or safety of myself.

### Unfair work Conditions

Denied benefits or promotions to specific employees, discriminating against older workers, unequal pay, and many others.

Jimmy Williams
5.15.24
1.48AM

DALLAS, TX AREA LOCAL

**PAWU**

American Postal Workers Union, AFL-CIO

2010 Postal Way
Dallas, TX 75212
(214) 631-3162

GRIEVANCE # _____

CRAFT: Maintenance

DATE: 5·15·24   PHONE #: 6785860810

NAME: Sharlene Jackson   EIN #: _____

MAILING ADDRESS: PO Box 177231 Irving TX 75017

EMAIL: Sharlene.jackson2.G@yahoo.com   CIRCLE ONE: FTR **PSE**

P/L: _____ SENIORITY DATE: _____ LEVEL 7 STEP CC OFF DAYS: F/S DUTY HOURS 1/0

LIFETIME SECURITY: YES / NO   VETERAN: YES / (NO)   DO YOU WANT TO BE PRESENT AT STEP 1? YES / NO

DETAIL STATEMENT:

Supervisors Kim Obadebo & Jessi Potts have been denying my higher level for Months. Either I was paid a couple of days out of the week or not at all unlike my counter parts. I would like to be Made whole starting back to when Patel B Manishaben 7-8 Months?, Robert S Ceballos Jr 1, Bryant Carruth 1 have been paid level 9. I'm the Most qualified people being a level 9 in the past. I would like all Monies due and any time any of these employee's gets higher level 9.

EMPLOYEE'S SIGNATURE: Sharlene Jackson   DATE 5·15·24

APWU

DALLAS, TX AREA LOCAL

3010 Postal Way
Dallas, TX 75212
214) 631-3162

GRIEVANCE #_____

**American Postal Workers Union, AFL-CIO**

DATE: 5·15·24    PHONE #: 6788860810    CRAFT: Maintenance

NAME: Sharlene Jackson    EIN #: 01506333

MAILING ADDRESS: PO Box 177231 Irving TX 75017

EMAIL: Sharlene.jackson4@yahoo    CIRCLE ONE: FTR  PSE

P/L:____ SENIORITY DATE:_____ LEVEL 7 STEP ____ OFF DAYS: F/S  DUTY HOURS 40

LIFETIME SECURITY: YES / NO  VETERAN: YES / NO   DO YOU WANT TO BE PRESENT AT STEP 1? YES / NO

DETAIL STATEMENT:

I would like to get paid as well

EMPLOYEE'S SIGNATURE:_____DATE_____

5-22-2024
10:33 pm
JIMMY WILLIAM

**APWU**

DALLAS, TX AREA LOCAL

5010 Pearl way
Dallas, TX 75212
214 463 4940

GRIEVANCE #_____

**American Postal Workers Union, AFL-CIO**

DATE 5-22-24   PHONE #: 678 886 0810

NAME: Sharlene Jackson                    CRAFT: Maintenance

MAILING ADDRESS:                          EIN #: 01506333

EMAIL: sharlene.jackson20@yahoo.com  CIRCLE ONE: (FTR) PSE

P/L:____ SENIORITY DATE:_____ LEVEL 7 STEP CC OFF DAYS CU/T DUTY HOURS 4A

LIFETIME SECURITY: YES / NO  VETERAN: YES / (NO)  DO YOU WANT TO BE PRESENT AT STEP 1? (YES) NO

DETAIL STATEMENT:

I was late to work on Wed May 22, 2024. (Tues Nigh
There were other employee's late as well.
On Wed 22, 2024 (Night for thursday).
Kim Agbadebo called me into the office to
sign a 3971 where I stated to her
that I was not going to sign because
I made up the time at the end of my
shift.
So if any went into the system to
change my time I would like a full
investigation.

EMPLOYEE'S SIGNATURE: Sharlene Jackson   DATE 5-22-24

5·22·24
10:33pm
Jimmy William

APWU

DALLAS, TX AREA LOCAL

2010 Postal Way
Dallas, TX 75212
(214) 631-3160

GRIEVANCE #_____

American Postal Workers Union, AFL-CIO

DATE: 5·22·24    PHONE #: 678 886 0810    CRAFT: Maintenance

NAME: Sharlene Jackson    EIN #: 0506333

MAILING ADDRESS: _____

EMAIL: Sharlene.jackson2@yahoo.com    CIRCLE ONE: (FTR) PSE

P/L:____ SENIORITY DATE:_____ LEVEL 7 STEP CC OFF DAYS: W/T DUTY HOURS 40

LIFETIME SECURITY: YES / NO   VETERAN: YES / (NO)   DO YOU WANT TO BE PRESENT AT STEP 1? (YES) / NO

DETAIL STATEMENT:

She Refuse to give me a copy of the
3971 because I did not sign it.
The bullying and harassment has got to stop.

EMPLOYEE'S SIGNATURE: Sharlene Jackson    DATE 5·22·24

Jimmy Williams
3:20 AM
5.30.2024

APWU

DALLAS, TX AREA LOCAL

3010 Postal Way
Dallas, TX 75212
214) 631-3153

American Postal Workers Union, AFL-CIO

GRIEVANCE #_____

DATE 5·30·2024 PHONE #: 678 886 0810 CRAFT: Maintenance

NAME: Sharlene (Jackson) EIN #: 01506333

MAILING ADDRESS: PO Box 177231 Irving TX 75060

EMAIL: sharlene.jackson2@yahoo.com CIRCLE ONE: (FTR) PSE

P/L:___ SENIORITY DATE:_____ LEVEL___ STEP___ OFF DAYS: W ~~F~~ DUTY HOURS ___40___

LIFETIME SECURITY: YES / NO  VETERAN: YES / NO   DO YOU WANT TO BE PRESENT AT STEP 1? (YES) NO

DETAIL STATEMENT:

On 5·30·2024 @ 2:30AM, I was given
and I and I (disciplinary action), with
Kim  Tim Trovillo (2048), and Union Steward
Jimmy Williams.
Attached are a list of question asked in
the I&I which was untrue.
Every since I filed a grievance on
5·21 or 5·22. Kim has been bullying
harassing and using intimidation tactics
for me filing a grievance because None
of this was happen before 5·21·22, 2024

EMPLOYEE'S SIGNATURE: Sharlene Jackson DATE 5·30·2024

JIMMY
6·5·2024
1:05 AM

**APWU**

DALLAS, TX AREA LOCAL

3000 Postal Way
Dallas, TX 75212
(214) 631-3163

GRIEVANCE # _____

American Postal Workers Union, AFL-CIO

DATE: 6·5·2024    PHONE #: 678 8860810    CRAFT: _____

NAME: SHarlene Jackson    EIN #: 01506333

MAILING ADDRESS: _____

EMAIL: sharlene.jackson2@yahoo.com    CIRCLE ONE: FTR PSE

P/L: ___ SENIORITY DATE: _____ LEVEL ___ STEP ___ OFF DAYS: S/F DUTY HOURS 40

LIFETIME SECURITY: YES / NO  VETERAN: YES / NO    DO YOU WANT TO BE PRESENT AT STEP 1? YES / NO

DETAIL STATEMENT:

I have spoken to Mr. Raymund Tibayan MMD Tour.1
Maintenance about the Retaliation, intimidation D
discrimination of his Maintenance Management team
from a grievance filed on 5·15·2024

When I first spoke to him "he said that he does not
see it"

The second communication was via email which is
attached.
He still Refuse to identify the problem

All of this is beginning to stree me out. If this
Matter is not address soon
I will have to request ~~retaliation~~ Administrative
leave until he resolve this Matter

Maintenance Management Team Tour.1

Raymund Tibayana          Rodney Ellington
Kim Gbadebo               Edwin Suttons
Jessica Potts             Thomas Trovillo (2048)

EMPLOYEE'S SIGNATURE: Sharlene Jackson    DATE 6·5·2024

JT&WW 6/7/1 AWS
6·5·2024
105AM

**DALLAS, TX AREA LOCAL**

2010 Postal Way
Dallas, TX 75210
314 · 631 · 3450

GRIEVANCE # _____

**American Postal Workers Union, AFL-CIO**

DATE: 6·5·2024    PHONE #: 678 886 0810    CRAFT: _____

NAME: Sharlene Jackson    EIN #: 01506833

MAILING ADDRESS: _____

EMAIL: sharlene.jackson2@yahoo.com    CIRCLE ONE: (FTR) PSE

P/L: ___ SENIORITY DATE: ___ LEVEL ___ STEP ___ OFF DAYS: S/F DUTY HOURS 40

LIFETIME SECURITY: YES / NO  VETERAN: YES / NO    DO YOU WANT TO BE PRESENT AT STEP ? (YES) / NO

DETAIL STATEMENT:

On 5·15·24, I submitted a grievance requesting compensation for being denied higher level pay (Level 9). I spoke to Mr. Jimmy Williams and he showed me the paper work to where he requested from the Maintenance supervisor and MMO of Tour 1. Requesting: Patel B Manishaben, Robre S Ceballos Jr, and Bryant Careuth.

Raymund Tibayan & Jessica Potts went on vaction for a week. But during this wee there were other Form 50 Supervisor's and acting MMO in the office to provide the requested information.

The Maintenance team for Tour 1 is refusing to give My APWU union stewart the information requested in a timely manner.

I am requesting interest compounded daily until payment is Rendered.

Now the Management team tour 1 will not pay higher level to employee's where high-er level is warranted.

EMPLOYEE'S SIGNATURE: Sharlene Jackson    DATE 6·5·2024

Tour 1 Management Team: Raymund Tibayana (MMO)
Kim Gbadebo, Jessica Potts, Edwin Sutton, Rodney Ellington

U.S POSTAL SERVICE
UNITED STATES
POSTAL SERVICE

Name: **Sharlene Jackson**
  EIN: **01506333**
  PL: **407**

**CRAFT: Maintenance Mechanic**

**REPORTING TIME: 21:00-05:50**

**INVESTIGATIVE INTERVIEW:**

**Thursday  May 30, 2024**

**This is a investigative interview with you, (Sharlene Jackson)  (your day in court). The purpose of the interview is to gather information and afford you the opportunity to provide feedback. Your answers will help to determine whether this investigative interview will lead to corrective and/or disciplinary action including removal from the Postal Service.**

**The Section ELM 665.3 of the Employee and Labor Relations Manual (ELM) requires all employees to cooperate with postal investigations, therefore during this investigative interview you are required to cooperate and provide true statements.**

**You are charged with: Failure to Follow Orders.**

**ELM # 660.Conduct. Failure to follow Orders. Obedience to Orders.**

1. **Do you understand you are to cooperate with this investigation in a civil manner and answer all questions truthfully?**

2. **Do you understand that as an USPS employee, you are responsible for your conduct and ethical behavior:**

3. **Do you understand your job title and duties as a Maintenance Mechanic?**

4. Did you say, I want you'll to write me up because I am not doing "shit".  That is language unbecoming.  Was this said by you?  Yes or No?

5. Did you state I want you'll to write me up because you'll will see what happens.  I will show you'll and you'll and you'll will keep fucking with me and you'll will find out?  Was this threat made to your supervisor tonight?

6. Did you state you will not do the job you were assigned tonight.  Yes or No?

7. You have been told to answer your radio and you did not do that on several occasions. Yes or No?

8. You were told not to be on the workroom floor on your phone and you still persisted on doing that. Yes or No?

**9.** You were told as a group to be in your work areas and not use the copier in the supervisor's office without permission and you have persisted on doing that? Yes or No?

_____

**Supervisor of Maintenance Operations**

_____

Date: **05/30/2024**

_____

**Signature of Supervisor conducting Interview:**

_____

**Name of APWU Representative present:**

Texas 1 District
North Texas- Processing and Distribution Center


**UNITED STATES**
**POSTAL SERVICE**

DATE:   June 6, 2024

REF: SA: Texas 1: HR: LR: Kim Gbadebo: tab: 75099

Subj:   Letter of Warning

To:    Sharlene Jackson                    EIN: 01506333
       North Texas P&DC                    Maintenance Mechanic
       951 W. Bethel Road
       Coppell, TX. 75009

In accordance with Article 16, Section 3 of the National Agreement, this official Letter of Warning
is being issued to you for the following reasons:

**Charge: Failure to Follow Instructions/ Unsatisfactory Work Performance**

Sharlene Jackson has been creating a hostile work environment. There have been complaints of
Jackson not doing her scheduled daily job assignment, not turning her paperwork in, and not
answering her radio when paged. On the night of Thursday, May 30, 2024, Jackson was given
her nightly assignment in the nightly maintenance meetings held at the beginning of the tour.
When told of her assignment and given her assignment sheet. Jackson states to her supervisor,
Edwin Sutton at the end of the meeting, "Which assignment do you want me to do because I'm
not doing both." Sutton tells her to do what she can she states, "better yet just write me up
because I'm not doing shit."

On Thursday May 30, 2024, you were given an investigative interview with your representative
present and afforded an opportunity to respond to your actions. When asked do you understand
that as an USPS employee, you are responsible for your conduct and ethical behavior. Employee
made no comment. When asked do you understand your job title and duties as Maintenance
Mechanic you stated, "Yes." When asked to have you been told to answer your radio and you did
not do that on several occasions? Employee made no comment. When asked were you told not
to be on the workroom floor on your phone and you persisted on doing that? Employee made no
comment. When asked if you understood you are to cooperate with this investigation in a civil
manner and answer all questions truthfully? Employee made no comment. Your explanations
were noted; however, it remains.

Your actions as described are in violation of the following sections of the Employee and Labor
Relations Manual (ELM) but not limited to:

**ELM**

**665 Postal Service Standards of Conduct**

**665.1 General Expectations**

***665.11 Loyalty***
Employees are expected to be loyal to the United States government and uphold the policies and
regulations of the Postal Service.

***665.13 Discharge of Duties***
DISC
pg. 1
Letter of Warning
SHARLENE JACKSON
EIN:01506333

Texas 1 District
North Texas- Processing and Distribution Center

*Employees are expected to discharge their assigned duties conscientiously and effectively.*

**665.15 Obedience to Orders**
Employees must obey the instructions of their supervisors. If an employee has reason to question the propriety of a supervisor's order, the individual must nevertheless carry out the order and may immediately file a protest in writing to the official in charge of the installation or may appeal through official channels.

It is hoped that this official Letter of Warning will serve to impress upon you the seriousness of your actions and that future discipline will not be necessary. If you are having difficulties which I may not be aware of, or if you need additional assistance or instructions for improving your performance, please call on me, or you may consult with other supervisors, and we will assist you where possible. However, I must warn you that any future deficiency (or misconduct, or offense) will result in more severe disciplinary action being taken against you. Such action may include suspensions, reduction ingrate and/or pay, or removal from the Postal Service.

You have the right to file a grievance under the grievance /arbitration procedure set forth in Article 15 of the National Agreement within 14 calendar days of your receipt of this letter.

Sharlene Jackson
Name:

Title _MM    T-1_

Kim Gbadebo
Supervisor Customer Service

I have received the original of this letter on _6-23-24_

Signature _RTS_                                    Time _11:15 pm_
(Indicates Receipt Only)


cc:  eOPF
      Labor Relations
      Concurring Manager


DISC
pg. 2
Letter of Warning
SHARLENE JACKSON
EIN:01506333

A good steward is many things - an organizer, a negotiator, a counselor, a peacemaker and a troublemaker.

*But there are certain things that a steward must avoid at all costs:*
## Mistake 1 - Failing to Represent Fairly
Not only can this leave the union open to being sued for breaching its duty to provide fair representation, it's just not the right thing to do. It undermines the whole purpose of the union and the very idea of solidarity. Every grievance should be weighed on its own merits, regardless of who files it.

## Mistake 2 - Making Backroom Deals
Management is notorious for trying to get stewards to trade grievances. "I'll let you have this case if you drop the one we talked about yesterday." Every member deserves a fair shake and every grievance needs to be evaluated on its own merit. *Never agree to anything you would be uncomfortable telling your entire membership about.* Any group settlement of grievances should be done by the entire union committee, not the steward by themselves.
## Mistake 3 - Failing to Organize
Stewards are much more than grievance handlers. They are the key people in the local who mobilize the membership. They must be **talkin' union and fightin' union** all the time. Each and every grievance and incident must be looked at in terms of how it can increase participation, build the union, and create new leaders. The union is built by involving the members in winning grievances. From wearing buttons and stickers, to signing petitions, working to rule or acting as witnesses for the union during grievance meetings, these actions help build the union.
## Mistake 4 - Promising Remedies Too Quickly
You're hurting both the member and your credibility if you pass judgment on a grievance prior to a thorough investigation. Only after you have spoken to the grievant and witnesses and consulted the contract, the employer's rules and past practices are you in a position to make that determination. Given the frequency of poor and mixed arbitration decisions, no steward should make promises about the expected outcome of a grievance.

## Mistake 5 - Failing to Speak with New Workers
The most important way a union gains the support of a new member or a potential new member is by one-on-one contact with the steward. You not only want to provide new workers with information, but need to build a personal relationship and begin to get them involved in union activities from their first day on the job. The steward should provide the new worker with a copy of the union contract, and sign the worker up into the union, and not leave that to management.

## Mistake 6 - Failing to Adhere to Time Lines
Even the strongest, iron-clad case can be lost if the time line specified in your contract isn't followed. Even if management agrees to an extension, it is not in the union's interest to let problems fester and grow. If you do get a formal extension of time limits, be sure to get it in writing. If you can't get it in writing make sure there are other union witnesses present.
## Mistake 7 - Letting a Grievance Go Un-filed
Every grievance that goes un-filed undermines the contract people struggled hard to win. While most members see changes and problems only in terms of the impact on them, the

steward needs to be able to understand a grievance's impact on the contract and the union as a whole. Remember, the union has the right to file a grievance even if the worker involved doesn't want to. When a basic principle is involved that could affect other workers, the steward should file the grievance.

## Mistake 8 - Meeting with Management Alone

When you meet with management alone, suspicions may arise as to what kinds of deals you might be making. It also allows management to lie or change its story. More importantly, when the steward meets with management alone, it takes away an opportunity for members to participate in the union and to understand that it's really their organization. Sometimes it is hard to avoid meeting with a supervisor or foreman alone. They approach you at your workplace or call you into their office. If this happens, be sure you tell the other union reps what the discussion was about.

## Mistake 9 - Failing to Get Settlements in Writing

Just as you should protect yourself by not meeting alone with management, be sure to get any settlement in writing. Putting the settlement in writing helps clarify the issues and keeps management from backing down. Many grievances are settled before they get to the written stage of the procedure. The steward should keep a notebook with all the important information concerning the settlement. Who was involved, what was the issue and what was the settlement. Remember, a grievance is any problem that arises. The hundreds of day-to-day issues that never reach the written grievance stage can be very important when trying to prove past practice. Facts, not vague memories, are needed to prove past practice.

## Mistake 10 - Passing the Buck

It is the steward's responsibility to deal with the members in their area— keep them informed, investigate  problems, decide whether to grieve matters and do the first-step oral presentation of the grievance.  Sometimes stewards are tempted to pass the buck and refer members to the union president or another union officer.  While it is important to get advice and support if you are unsure about how to proceed, having a strong union means everyone does their part.

## Mistake 11 – Failing to Work as a Union Team

Stewards are most effective when they work as a team. Each steward should know what is happening in different work areas.  Stewards should check with the chief steward, other officers or even older union members to make sure they understand past practices that may exist in the workplace.

## Mistake 12 - Failing to Publicize Victories

Publicizing each and every victory is an important way to build your local union. This publicity not only has a chilling effect on the employer, but helps educate our own members on their contractual rights. All too often, members don't hear about union successes. Let them know we've won and that it's a victory for the entire union.  It gives you something to celebrate, helps build pride in the union and builds the inspiration needed to carry on.

*Based on "A Union Steward's Ten Biggest Mistakes" by Tom Juravich and Kate Bronfenbrenner, with additions by The UE Steward.*

## A Basic Review: Steward's Rights

Don't let the boss con you. As a *UE Steward*, you've been elected to represent your members—a job that most bosses would like to keep you from doing. Here's a brief list of some of your rights.

1. You have the **RIGHT to grieve about unfair treatment**—whether you saw it happen or someone calls it to your attention. Bosses may accuse you of "soliciting grievances," but don't be fooled! It's your duty to encourage workers to grieve about legitimate issues—or file them yourself.

2. You have the **RIGHT to carry out investigations of grievances**, including interviews of grievants and witnesses. Most UE contracts provide for investigation on "company time." For those that don't, there is often a clear past practice that allows this. But, if not, every grievance must be investigated as thoroughly as necessary, even if it's on your own time.

3. You have the **RIGHT to organize and encourage your fellow workers to take action** in support of an issue or grievance, so long as it doesn't take place on work time and interfere with production. The boss can't stop you from getting people to wear stickers, sign petitions, carry signs, or take similar actions on break or lunch time. (Of course, stickers, buttons and caps can be worn *all* the time, unless there's a special reason for a dress code.)

4. You have the **RIGHT to request the information** you need to investigate and determine whether there is a grievance, or process a grievance, from management. You should put these requests in writing. Management is obligated to respond (see *Information Requests, UE Steward Handbook, page 36.*)

5. You have the **RIGHT to be present in any meeting** between the boss and an employee if it might lead to discipline (see *Weingarten Rights, UE Steward Handbook, page 15.*)

6. You have the **RIGHT to be present every time a grievance is being "adjusted" or settled**. Even if a worker has taken up the grievance on their own, the boss can't bypass the union when responding.

7. You have the **RIGHT to stand toe- to-toe with your boss when you're conducting union business**. You can get loud, angry, forceful, and speak your mind during grievance meetings. This is the "Equality Principle" that says you and the boss are equals in grievance discussions (see *The Equality Rule, UE Steward Handbook, page 12*)

ngs